**Randall Edgar MANN, III**

v.

**Deborah Jennings MANN.**

Court of Appeals of Tennessee,
Middle Section, at Nashville.

March 12, 2009 Session.

April 30, 2009.

Radford H. Dimmick, Nashville, Tennessee, for the appellant, Deborah Jennings Mann.

Alan D. Johnson and Mary Arline Evans, Nashville, Tennessee, for the appellee, Randall Edgar Mann, III.

## OPINION

FRANK G. CLEMENT, JR., J., delivered the opinion of the court, in which ANDY D. BENNETT and RICHARD H. DINKINS, JJ., joined.

The father of the parties' minor children filed this action opposing the mother's request to relocate with the children to Knoxville, Tennessee, so that she could reside with her new husband. Her reasons were that her new husband, a civil engineer, lived and worked in Knoxville, his income was substantially more than hers, her husband could not obtain an equivalent income if he relocated to Nashville, and her employer had agreed that she could transfer to Knoxville and retain her present job. Because the mother was spending substantially more time with the children, the criteria in Tenn.Code Ann. § 36–6–108(d) applies. The trial court found the move was not for a reasonable purpose, it posed a specific and serious harm to the children, and it was not in the children's best interests. Based upon those findings, the trial court denied mother's request to relocate with the children. This appeal followed. We have determined that the father failed to establish that the mother did not have a reasonable purpose to relocate or that the relocation posed a threat of specific and serious harm to the children; thus, the father failed to establish an essential ground upon which the mother's request to relocate could be denied by the trial court. Because no ground exists upon which to deny the requested relocation, we reverse the judgment of the trial court and remand with instructions, as Tenn.Code Ann. § 36–6–108(d) directs, to grant the mother's request to relocate with the children and to modify the parenting plan after affording the parties the opportunity to present evidence relevant to that issue.

Deborah Jennings Mann (Mother) and Randall Edgar Mann, III, (Father), the parents of two minor children, were divorced in July 2005 following a thirteen-year marriage. Mother was designated as the primary residential parent to the parties' two children, who were two and seven years old at the time of divorce. Following the divorce, Mother continued to live in Davidson County.

On March 28, 2008, Mother served Father with notice of her intent to relocate with the children pursuant to the Parental Relocation Statute, Tenn.Code Ann. § 36–6–108. The principal reason for relocating was that she was engaged to marry Douglas Kurt Duren, who lived and worked in Knoxville, Tennessee. Father timely filed a petition in opposition to the relocation, at which time the trial court issued a Temporary Restraining Order enjoining Mother from relocating until a full hearing on the matter.

It was undisputed that Mother spends substantially more time with the children. Accordingly, the petition was to be reviewed pursuant to the criteria set forth in Tenn.Code Ann. § 36–6–108(d)(1)(A)–(C).

Following an evidentiary hearing, the trial court denied Mother's request to relocate on the grounds that (1) there was not a reasonable purpose for the move; (2) the move posed a threat of serious and specific harm to the children; and (3) relocation was not in the children's best interests. The trial court also awarded Father attorney's fees in the amount of $9,500. This appeal followed.

## STANDARD OF REVIEW

The standard of review of a trial court's findings of fact is de novo, and we presume that the findings of fact are correct unless the preponderance of the evidence is otherwise. Tenn. R.App. P. 13(d); *Rawlings v. John Hancock Mut. Life Ins. Co.*, 78 S.W.3d 291, 296 (Tenn.Ct.App.2001). For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect. *Walker v. Sidney Gilreath & Assocs.*, 40 S.W.3d 66, 71 (Tenn.Ct.App. 2000); *The Realty Shop, Inc. v. R.R. Westminster Holding, Inc.*, 7 S.W.3d 581, 596 (Tenn.Ct.App.1999). Where the trial court does not make findings of fact, there is no presumption of correctness and we "must conduct our own independent review of the record to determine where the preponderance of the evidence lies." *Brooks v. Brooks*, 992 S.W.2d 403, 405 (Tenn.1999). We also give great weight to a trial court's determinations of credibility of witnesses. *Estate of Walton v. Young*, 950 S.W.2d 956, 959 (Tenn.1997); *B & G Constr., Inc. v. Polk*, 37 S.W.3d 462, 465 (Tenn.Ct.App. 2000). Issues of law are reviewed de novo with no presumption of correctness. *Nelson v. Wal–Mart Stores, Inc.*, 8 S.W.3d 625, 628 (Tenn.1999).

## ANALYSIS

When a divorced parent seeks to relocate with the parties' children more than 100 miles from the other parent, Tenn. Code Ann. § 36–6–108 provides that the relocating parent shall give notice of the proposed move to the other parent. Knoxville is more than 100 miles from Nashville; therefore, Mother gave notice to Father of her planned relocation with the children.[1] Father timely filed this petition to enjoin Mother from relocating with the children.

As the parent spending substantially more time with the children, Mother was entitled to relocate with the children *unless* Father could establish one of three grounds in Tenn.Code Ann. § 36–6–108(d) for which the relocation should be denied,[2] and, if a ground was established, to additionally prove the relocation was not in the children's best interests. Two of the grounds in Tenn.Code Ann. § 36–6–108(d) are at issue here: (1) whether the relocation does not have a reasonable purpose and (2) whether the relocation would pose a threat of specific and serious harm to the child that outweighs the threat of harm to the child of a change of custody. Tenn. Code Ann. § 36–6–108(d)(1)(A)–(B).

If the trial court finds that none of the grounds listed in Tenn.Code Ann. § 36–6–108(d) have been established, then the trial court "shall" grant Mother's request to relocate to Knoxville with the children.[3]

---

1. In the notice to Father of her reasons for relocating with the children, Mother stated that she was engaged to be married to Douglas Kurt Duren, who lived and worked in Knoxville. Mother married Mr. Duren on July 12, 2008.

2. The grounds are:
   (1) The relocation does not have a reasonable purpose;
   (2) The relocation would pose a threat of specific and serious harm to the child that outweighs the threat of harm to the child of a change of custody; or
   (3) The parent's motive for relocating with the child is vindictive in that it is intended to defeat or deter visitation rights of the non-custodial parent or the parent spending less time with the child.
   Tenn.Code Ann. § 36–6–108(d)(1)(A)–(C).

3. Pursuant to the statute, the issue concerning the best interests of the children is pretermitted unless one of the grounds in Tenn.Code Ann. § 36–6–108(d)(1)(A)–(C) is found by the trial court. *See Webster v. Webster*, No. W2005–01288–COA–R3–CV, 2006 WL 3008019, at *14 (Tenn.Ct.App. Oct.24, 2006).

If, however, the trial court finds that any of the grounds listed in Tenn.Code Ann. § 36–6–108(d) have been established, the court is required to make a further determination, that being whether relocation is in the children's best interests. Tenn. Code Ann. § 36–6–108(e). If it is, then relocation is to be granted. If, however, the court finds it is not in the best interests of the children to relocate, then the requested relocation is to be denied, and if the parent elects to relocate without the children, the trial court must modify the parenting plan after considering all relevant factors. Tenn.Code Ann. § 36–6–108(e).

In this case, the trial court found that Mother did not have a reasonable purpose for the relocation and that the relocation posed a threat of specific and serious harm to the children. As Tenn.Code Ann. § 36–6–108(d) mandates, the trial court considered whether the proposed relocation was or was not in the children's best interests. The court found that it was not.[4]

We will, therefore, determine whether the evidence supports or preponderates against the trial court's findings that Mother did not have a reasonable purpose for relocating to Knoxville and whether relocation posed a threat of specific and serious harm to the children.

### REASONABLE PURPOSE

■ Mother contends she has a reasonable purpose to relocate to Knoxville. Her reasons are that her new husband, a civil engineer, lives and works in Knoxville, his income is substantially more than hers, and she could transfer to Knoxville and retain her present job and salary. But, if her husband relocated to Nashville he could not keep the same job with his company or obtain an equivalent income.

Mr. Duren is a civil engineer and has worked for the same company for ten years. He earns $84,000 a year and Mother earns significantly less. Mr. Duren's employer has an office in Nashville, however, the division in which he works does not have an office in Nashville. For this reason he cannot transfer to Nashville and retain the same salary. Further, the record indicates the prospects of Mr. Duren obtaining a job earning comparable compensation in Nashville were modest. On the other hand, Mother works for the State of Tennessee, and she has been authorized to transfer to Knoxville where she would retain the same salary. It is upon these facts that Mother asserts her reason for relocating to Knoxville is reasonable.

Father argues that the proposed relocation is based solely on Mother's new marriage, which circumstance, he contends, does not constitute a reasonable purpose. Father relies on this court's opinion in *Mitchell v. Mitchell*, No. M2004–00849–COA–R3–CV, 2005 WL 1521850, at *1 (Tenn.Ct.App. June 27, 2005). We, however, find Father's reliance on *Mitchell* misplaced because the facts are easily distinguishable from those at issue here.

In *Mitchell*, the mother sought to relocate to California with the parties' child because she was getting married, her new husband resided and worked in California, and she desired to live with him in California. To support her claim that the move was for a reasonable purpose, she stated that her future spouse's family—none of whom she had met—could help raise her child, California offered better educational opportunities, and she had found employment in California. The trial court denied her relocation, which decision we affirmed, because she did not have a job in Califor-

4. Following the adverse ruling, Mother elected to stay in Nashville with the children. Therefore, it was not necessary to modify the parenting plan.

nia, she had no reasonable basis upon which to believe that her in-laws would help care for her child, and there was no basis upon which to conclude that the child would receive a better education in California.

■ As for Ms. Mitchell's claim that her move to California was reasonable because she had obtained employment, we found that to be untrue and not reasonable due to the disparate cost of living.

There is evidence that Mother discussed employment with three companies, however, there is no evidence that she has employment in California. She has provided no definite position or firm salary as an impetus for or to justify the move. At best, she has the mere hope of future work, which this court has previously deemed insufficient to support a finding of a reasonable purpose for relocation. See O'Bannon v. O'Bannon, No. E2002–02553–COA–R3–CV, 2003 WL 22734673, at *2 (Tenn.Ct.App. Nov.20, 2003). Mother's purported employment purpose is little more than a belief that she can secure work after she moves to California.

The trial court found not only that Mother did not have employment but that she had failed to show that any of the job possibilities would be economically sufficient to justify relocation with the child. Mother testified about a possible position with Nordstrom as a sales representative. The specific position and salary were unknown to Mother as she had not been actually offered a job with Nordstrom; nevertheless, if she were hired and if she worked in the jewelry department and if she were offered the highest hourly wage in that department, she could earn $10.75 an hour with 4.5% commission on sales. This illusive and improbable scenario must be compared to Mother's previous

employment with Cookeville Regional Medical Center where her hourly compensation, depending on the shift, was $7.00, $7.50 or $9.00.

Mitchell, 2005 WL 1521850, at *3. As we went on to state in Mitchell, when analyzing whether an employment opportunity may constitute a reasonable purpose for relocating, the cost of living of the two communities may be a relevant factor to consider. Id. Ms. Mitchell's house payments in Tennessee were a mere $393 a month; however, her housing costs in California were "estimated at either $1,125 for a two bedroom or $900 for a one bedroom apartment." Id. Assuming that Ms. Mitchell could obtain the desired employment in California, we determined that the evidence demonstrated that "the higher income per hour, should she be employed by Nordstrom, would be more than offset by the higher cost of living in California. Accordingly, we find that the evidence does not preponderate against the trial court's finding." Id. Accordingly, Ms. Mitchell's uncertain prospects for employment in California, especially when considered in light of the higher cost of living in California, did not constitute a reasonable purpose. Id.

As for Ms. Mitchell's claim that the move to California was reasonable because she would have the additional benefit of living near her husband's family, we found no credible proof to support the claimed benefit. To the contrary, the evidence showed that "Mother had not met his family when she listed being closer to them as a reasonable ground for relocation." Id. at *3 (emphasis added). We also found it relevant that Mother's relationship with her new husband had very shallow roots; that "Ms. Mitchell met her fiancé on the Internet" and "[t]hey corresponded [on the internet] without meeting for approximately two years. Their first meeting occurred

in Nashville in June of 2002. They married after six additional meetings." *Id.* at *3 n. 3.

In addition, we found no evidence to support Ms. Mitchell's contention that the schools in California would provide better educational opportunities for the child and for Ms. Mitchell to finish her college degree because, as she claimed, "the colleges and universities are better in California." To the contrary, Ms. Mitchell admitted at trial that she was "pleased with their child's present school and that she was doing well in school." *Id.* at *4. Further, there was no evidence that the California university system offered a better program for Ms. Mitchell. Because there was no proof of the claimed superiority of the California school system we found it did not provide a reasonable purpose for the move. *Id.* (citing *Dunkin v. Dunkin,* M2002–01899–COA–R3–CV, 2003 WL 22238950, at *3 (Tenn.Ct.App. Sept.30, 2003)) (holding "[u]nsubstantiated claims of better educational opportunities, where there was no proof of the superiority of the school system other than the parent's own statement of the superiority, are insufficient to provide a reasonable purpose for the move.")

Based upon the above facts, we concluded that Ms. Mitchell's

> desire to reside with her new husband in California does not necessitate that it is reasonable for the child to relocate to California. A relocation based solely on a new marriage has been held to be insufficient. *See Schremp,* No. W1999–01734–COA–R3–CV, 2000 WL 1839127, at *2 (Tenn.Ct.App. Dec.7, 2000). As this court explained, while it is reasonable for a husband and wife to want to live together, marriage often requires sacrifices on the part of the husband and wife so they can share a residence. *Id.* Mother did not offer any additional evi-

dence to explain why she had to relocate to California as opposed to her new husband relocating to Putnam County, Tennessee or another location. As *Schremp* explained, new spouses have to make many choices, one of which is where they desire to reside. *Id.* at *2. Furthermore, if one of them is a parent residing in Tennessee, then there is another choice to make and that is whether it is reasonable, or more reasonable, for the husband to relocate to the wife's community or for the wife to relocate to the husband's community. *Id.* Here, the evidence does not preponderate against the trial judge's finding that it was not reasonable for Mother to relocate with the child to California.

*Id.* at *3.

Having distinguished *Mitchell* from the facts of this case, we now focus on the evidence, or lack thereof, that Mother's planned relocation is not for a reasonable purpose.

The burden was not on Mother to prove the reasonableness of her planned relocation; to the contrary, the burden was upon Father to establish that the relocation was *not* for a reasonable purpose and he failed to satisfy his burden of proof. Although it was not her burden to do so, Mother established that she had recently married and that she desired to reside with her husband. Moreover, Mother established that she and her husband considered whether it was more reasonable for her husband to relocate to Nashville or for her to relocate to Knoxville. Consequently, they determined that if the husband moved to Nashville, he would suffer a significant reduction in income, but if Mother moved to Knoxville, they would not lose any income because her employer had approved her transfer to a Knoxville office with the same compensation. Moreover, her husband is a licensed professional who

has a reliable, ten year employment record with his employer, and his income is significantly more than Mother's income. Considering the evidence introduced by Mother, and more significantly, Father's lack of evidence that the relocation is not for a reasonable purpose, we find that Father failed to prove that the relocation was not for a reasonable purpose.

### SERIOUS AND SPECIFIC HARM TO THE CHILDREN

▉▉▉ When a court examines the allegation of a "threat of serious and specific harm" to the children, the trial court should look for "proof of such a threat." *Dunkin v. Dunkin,* No. M2002–01899–COA–R3–CV, 2003 WL 22238950, at *5 (Tenn.Ct.App. Sept.30, 2003). As the *Dunkin* court explained,

> [T]he statute is triggered by *affirmative* findings rather than negative findings. In other words, *when examining the "threat of serious and specific harm" to a child, see* Tenn.Code Ann. § 36–6–108(d)(2), *the trial court should look for proof of such a threat, rather than a lack of proof that there is no such threat.*

*Id.*[5] (emphasis added). Father contended that relocation to Knoxville posed a threat of serious and specific harm to the children. The trial court determined that relocation posed a specific and serious threat based upon the expressed findings the children "are very attached to baseball, playing two seasons each year, plus basketball

in the winter; they have friends in the neighborhood," and that "Father's contribution to the children's well-being is substantial."

It is undisputed that the children are attached to their father, to baseball and basketball, and they have many friends in the Nashville area; however, these undisputed facts, without more, are not a proper basis upon which to conclude that the children will be exposed to a threat of serious and specific harm by moving to Knoxville with Mother. We fully acknowledge that relocating children to a different community poses certain challenges, but these challenges, including the temporary sadness associated with leaving friends and teammates behind, do not constitute "a threat of serious or specific harm" to an otherwise healthy, happy, and well-rounded child. *See Bulick v. Thompson,* No. W2004–00816–COA–R3–CV, 2005 WL 123502, at *9 (Tenn.Ct.App. Jan.18, 2005) (citing *Collins v. Coode,* No. M2002–02557–COAR3–CV, 2004 WL 904097 (Tenn.Ct.App. April 27, 2004)) (holding the upheaval of moving, in and of itself, "cannot constitute a basis for the drastic measure of a change in custody").

Although the list is not exclusive, the General Assembly has provided guidance concerning what constitutes a threat of "specific and serious harm." Specific and serious harm to a child includes:

> (A) If a parent wishes to take *a child with a serious medical problem* to an

---

5. The reason the *Dunkin* court addressed the issue was to explain that the trial court erroneously based a finding of specific harm on the lack of proof that the move would not pose a threat as distinguished from affirmative proof that the move did pose a specific threat of harm. As the court explained: "[W]e find it necessary to point out that the trial court made certain findings in the instant case which were negative, such as '[t]here is no proof that [Mother] presents to

me that would indicate this child would not be harmed by this move' and 'I cannot find that this move would not be harmful to the child, based on the evidence presented.'" *Dunkin,* 2003 WL 22238950, at *5. The court went on to state that the statute is triggered by affirmative findings of a "threat of serious and specific harm" rather than a negative finding. *Id.* (citing Tenn.Code Ann. § 36–6–108(d)(2)).

area where no adequate treatment is readily available;

(B) If a parent wishes to take *a child with specific educational requirements* to an area with no acceptable education facilities;

(C) If a parent wishes to relocate and *take up residence with a person with a history of child or domestic abuse or who is currently abusing alcohol or other drugs;*

(D) If *the child relies on the parent not relocating who provides emotional support, nurturing and development such that removal would result in severe emotional detriment to the child;*

(E) If *the custodial parent is emotionally disturbed or dependent* such that the custodial parent is *not capable of adequately parenting the child in the absence of support systems currently in place* in this state, and such support system is not available at the proposed relocation site; or

(F) If the proposed relocation is to *a foreign country* whose public policy does not normally enforce the visitation rights of non-custodial parents, that does not have an adequately functioning legal system or that otherwise presents a substantial risk of specific and serious harm to the child.

Tenn.Code Ann. § 36–6–108(d)(2)(A)–(F) (emphasis added).

■ Having to leave behind teammates and friends when relocating with a responsible parent to another community does not pose a threat of specific and serious harm to a child, especially when the child is healthy, happy, and well-rounded as the parties' children are in this case. *See Bulick,* 2005 WL 123502, at *9. Relocation may, however, pose a threat if a "child relies on the parent not relocating who provides emotional support, nurturing and development such that removal would re-

sult in severe emotional detriment to the child." Tenn.Code Ann. § 36–6–108(d)(2)(D).

There is evidence that Father provides emotional support, nurturing and development for the children and that the children rely on their father, just as there is evidence that they rely on their mother. The fact the children rely on their father does not, however, come within the purview of subsection (D) because, as it expressly states, the children's reliance on their father must be *to such an extent* that relocating to Knoxville would result in *severe emotional detriment* to the children. Tenn.Code Ann. § 36–6–108(d)(2)(D). There is no evidence in this record that the children's reliance is so significant—"to such an extent"—that their relocation to Knoxville would result in "severe emotional detriment." Accordingly, none of the threats identified in Tenn.Code Ann. § 36–6–108(d)(2) are present in this case.

Having determined that none of the threats identified in Tenn.Code Ann. § 36–6–108(d)(2) are present in this case, we have examined the record and determined that Father has not presented evidence of other circumstances that pose a threat of specific and serious harm to the children. As the court in *Dunkin* instructs, the fact the record does not contain proof that the move "would not pose a threat," as distinguished from affirmative proof that the move did pose a specific threat of harm, is not a proper basis upon which to find a threat of specific and serious harm. *Dunkin,* 2003 WL 22238950, at *5 (citing Tenn. Code Ann. § 36–6–108(d)(2)) (holding it was error for the trial court to make findings based on the lack of evidence—evidence that was "negative, such as '[t]here is no proof that [Mother] presents to me that would indicate this child would not be harmed by this move' and 'I cannot find

that this move would not be harmful to the child, based on the evidence presented.' ").

Allowing Mother to move with the children will require the children to adapt to new teammates and new friends; however, these children are well-adjusted and fully equipped to deal with this adjustment. Moreover, Father has failed to establish that the children rely on their father *to such an extent* that relocating to Knoxville would result in *severe emotional detriment* to the children. *See* Tenn.Code Ann. § 36–6–108(d)(2)(D). Accordingly, Father has failed to establish that the move to Knoxville constitutes a threat of serious and specific harm to either child. Therefore, the evidence preponderates against the trial court's finding that the proposed relocation poses a threat of serious and specific harm to the children.

We have determined that none of the grounds listed in Tenn.Code Ann. § 36–6–108(d) have been established; therefore, the best interests analysis that was conducted by the trial court is pretermitted by statute. *See Webster v. Webster*, No. W2005–01288–COA–R3–CV, 2006 WL 3008019, at *14 (Tenn.Ct.App. Oct.24, 2006) (citing Tenn.Code Ann. § 36–6–108(d)(1)). Accordingly, we vacate the trial court's findings concerning best interests.

Because none of the grounds listed in Tenn.Code Ann. § 36–6–108(d) have been established, Mother's request to relocate to Knoxville with the children "shall" be granted. *See* Tenn.Code Ann. § 36–6–108(d)(1).

### ATTORNEY'S FEES

Mother appeals the trial court's award of attorney's fees to Father. Because Father is no longer the prevailing party, he is not entitled to recover attorney's fees. Thus, the trial court's award of attorney's fees is vacated.

### IN CONCLUSION

The judgment of the trial court is reversed and this matter is remanded with instructions to deny Father's petition, to grant Mother permission to relocate with the children to Knoxville, Tennessee, and for other proceedings consistent with this opinion including the modification of the parenting plan as necessitated by the relocation. Costs of appeal are assessed against Father.