IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
November 27, 2012 Session

**NICOLLE M. JOHNSON v. BRIAN KEITH JOHNSON**

**Appeal from the Chancery Court for Rutherford County**
**No. 090728DR      Royce Taylor, Judge**

**No. M2012-00900-COA-R3-CV- Filed January 31, 2013**

Mother and Father were divorced, and Mother was named the primary residential parent of their three children. Mother remarried and decided to relocate to California. Father opposed the relocation and sought to be named the primary residential parent. By the time of hearing, relocation of only one child was at issue. Father introduced expert testimony that the relocation would pose a threat of specific and serious harm to the child that outweighed the threat of harm to the child from a change of custody, as set forth in Tenn. Code Ann. §36-6-108(d)(1)(B). Relying on the expert's testimony, the trial court denied Mother the opportunity to relocate with the child to California. Mother appealed, and we affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

PATRICIA J. COTTRELL, P.J., M.S., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR. and RICHARD H. DINKINS, JJ., joined.

Laurie Y. Young, Joe M. Brandon, Jr., Murfreesboro, Tennessee, for the appellant, Nicolle M. Johnson.

Daryl Miller South, David O. Haley, Murfreesboro, Tennessee, for the appellee, Brian Keith Johnson.

**OPINION**

Nicolle M. Johnson ("Mother") and Brian Keith Johnson ("Father") were married for sixteen years and had three children together when Mother filed for divorce in May 2009, citing irreconcilable differences. The trial court granted Mother a Final Decree of Divorce in January 2010 and approved the Permanent Parenting Plan the parties submitted to the court. Mother was named the primary residential parent and Father was awarded 122 days

of visitation with the children per year.

Mother sent Father a notice of relocation in April 2011 in which Mother announced her intention of relocating to Anaheim, California. Mother's stated purpose for relocating to California was to attend a school to become a marine biologist.[1] Father filed a Petition in Opposition of Relocation and Modification of Parenting Plan in which he opposed Mother's relocation with the parties' children and asked the court to modify the parenting plan to name Father the primary residential parent.

The trial court held a hearing in February 2012 to determine whether Mother would be permitted to relocate with the parties' eleven year old daughter and seventeen year old son.[2] The seventeen year old son was in his final semester of high school and testified during the hearing that he intended to remain in Tennessee after high school and live with Father while he attended college. Mother agreed that the seventeen year old should be allowed to remain in Tennessee. The majority of the hearing centered on whether Mother should be permitted to take the parties' daughter 2000 miles away to live with Mother in California.

Father introduced an expert during the hearing who testified that moving to California would cause the daughter to suffer substantial emotional harm:

I believe that - - based on her statements and her behavior in my office that it would cause her a great deal of emotional stress to move to California. It causes her a great deal of emotional distress to even discuss moving to California. . . . [I]f the Court should decide that she will move to California she is going to need continued counseling, I believe, before that move takes place to even really address the reality of it.

The expert continued:

I believe it would cause her substantial emotional harm to move to California. Tennessee is her home. Her father is here. Her friends are here. Her school is here. She has established real - - her teachers, her brother, real connections with people that, in essence, she would have to give up for long extended periods of time if she were to move to California.

---

[1] Prior to the hearing Mother married a man she had been dating who lives in California. There was evidence that Mother's husband was working for a company he helped to start and that it was not likely he would be able to find a similar job in Tennessee that paid as well as his job in California.

[2] The parties' oldest child had reached the age of majority by the time of the court hearing.

On the other side of it, [the child] sees herself as in a losing situation either way the Court goes with this, in that she also does not want to lose her mother. But the harm of losing her mother is not as great as the harm of losing her father and all of those other factors in her life that I just stated.

Father's attorney then asked the expert, "[L]et's make it clear, is it, in fact, your professional opinion that she would, in fact, suffer substantial emotional harm if she's directed by this the Court to leave and go to the Anaheim, California area?" The expert responded, "Yes."

On cross examination Mother's attorney asked the expert whether the child's emotional distress was average and the same as any child would feel if she was moving out of state. The expert answered:

No. I wouldn't say that that's necessarily true. I think there are other factors. The typical child in your scenario who moves out of state is generally moving out of state with the mother and father and family intact.

This child would be moving out of state with the mother, leaving behind a father, leaving behind a brother and other family members that makes it, I think, a little less typical.

In response to Mother's attorney's question whether the child had an emotional disorder, the expert responded:

The diagnosis that I gave her, which is basically the most minimal diagnosis that you can give, is an adjustment disorder. That means that there is a particular situation that at this point she is grappling with and trying to adjust to and it's an adjustment disorder with anxiety and some depressed moods.

When asked whether any child would have these same feelings in this situation, with divorced parents and one moving away, the expert answered:

I think that she will have some emotional issues if her mother moves away, that if the Court decides to let the mother move to California and that [the child] can stay here. That's an adjustment too. And that she will have some depression, might even have some anxiety along with that. . . . But I would say that it would be considerably worse with the move to California.

Following the hearing the trial court issued an Order sustaining Father's opposition to Mother's relocation to California with the parties' eleven year-old daughter. The court determined that the parties do not spend substantially equal time with the children and that, therefore, section 36-6-108(d) of the Tennessee Code Annotated was applicable to resolving the parties' dispute. The court wrote:

3.      [T]he court has considered whether the mother has proposed and provided evidence of a reasonable purpose for her proposed relocation. The court finds that the mother's suggestion of relocating to California to go to school to become a Marine Biologist is not supported by the evidence and does not support a finding of a reasonable purpose.

4.      Upon consideration of the mother's very recent marriage, the court has reviewed case law and finds that her recent marriage does support a reasonable purpose for relocation.

5.      The court further finds that the mother's proposed relocation has not been submitted for any vindictive purpose.

6.      The court then has considered whether the relocation would pose a threat of specific and serious harm to the minor children/child that outweighs the threat of harm to the child of a change of custody. The court has considered all evidence as presented at trial and has considered the testimony of Ms. Elysse Beasley, whose qualifications as an expert in her field were stipulated. The court finds that Ms. Beasley has specifically opined that the minor daughter would suffer a specific and serious harm as a result of such relocation. She has further opined that such harm is significantly more involved and serious than the normal temporary unhappiness and adjustment trouble associated with most moves for children.

7.      The court finds the testimony of Ms. Beasley to be convincing and has been opined within the legal standards as required by law and therefore finds that it is not in the youngest daughter's best interest to relocate as a result of the specific threat of serious harm. The mother has further conceded that it is not proper for the oldest son who will graduate in May of 2012 to be forced to relocate.

The trial court stated that if Mother decided to relocate without the children, the parties would have to go to mediation to draw up a new parenting plan.

Mother appealed the trial court's order to this court. Mother asserts the trial court erred by finding her relocation to California poses a threat of specific and serious harm to her child that outweighs the threat of harm from a change of custody and that it is not in the child's best interest to relocate with Mother. Mother contends the evidence does not support the trial court's finding on this issue.

## ANALYSIS

Our review on appeal of the trial court's findings of fact is *de novo* with a presumption of correctness, unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); *Blair v. Brownson*, 197 S.W.3d 681, 684 (Tenn. 2006); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001); *Hass v. Knighton,* 676 S.W.2d 554, 555 (Tenn. 1984). For the evidence to preponderate against a trial court's finding of fact it must support another finding of fact more convincingly. *Mann v. Mann*, 299 S.W.3d 69, 71 (Tenn. Ct. App. 2009). We review a trial court's conclusions of law *de novo*, with no presumption of correctness. *Whaley v. Perkins*, 197 S.W.3d 665, 670 (Tenn. 2006); *Union Carbide Corp. v. Huddleston,* 854 S.W.2d 87, 91 (Tenn. 1993).

When divorced individuals have children and the primary residential parent desires to relocate more than one hundred miles from the other parent within the state, as here, the relocating parent is required to notify the other parent. Tenn. Code Ann. § 36-6-108(a), (d). The other parent can then choose to file a petition within thirty days opposing the removal of their child by the relocating parent. If such a petition is filed, the court is to consider certain factors to determine whether the relocating parent should be permitted to relocate with the child. The statute provides as follows:

> The parent spending the greater amount of time with the child shall be permitted to relocate with the child unless the court finds:
>
> (A) The relocation does not have a reasonable purpose;
>
> (B) The relocation would pose a threat of specific and serious harm to the child that outweighs the threat of harm to the child of a change of custody; or
>
> (C) The parent's motive for relocating with the child is vindictive in that it is intended to defeat or deter visitation rights of the non-custodial parent or the parent spending less time with the child.

Tenn. Code Ann. § 36-6-108(d)(1).

If a court finds one or more of the grounds specified in section (d)(1), the statute then directs the court to make a best interest determination:

If the court finds one (1) or more of the grounds designated in subsection (d), the court shall determine whether or not to permit relocation of the child based on the best interest of the child. If the court finds it is not in the best interests of the child to relocate as defined herein, but the parent with whom the child resides the majority of the time elects to relocate, the court shall make a custody determination and shall consider all relevant factors . . . .

Tenn. Code Ann. § 36-6-108(e).

The trial court found Mother's marriage in December 2011 supported a reasonable purpose for relocation. However, relying on the testimony provided by Husband's expert, the court found the relocation posed a threat of specific and serious harm to the child that outweighed the threat of harm to the child from a change of custody. The court then considered the child's best interest, as directed by the statute, and determined that it was not in the child's best interest to relocate because of the specific threat of serious harm.

Mother does not dispute the qualifications of Father's expert. Rather, she contends the expert provided insufficient evidence to support her testimony that the parties' child would suffer specific and serious harm from being forced to relocate that outweighed the threat of harm from a change in primary residential parent to Father. The expert testified she had met with the child about nine times and they had spoken about the possibility of moving to California. The expert explained that it was difficult for the child to discuss moving to California because it was too painful to think about:

[The child] has a great deal of difficulty talking about that. It's painful for her. She doesn't like to think about it. And, in fact, part of why she's only been seen nine times was that I just felt until this came to court that it was unfair to ask her to relive it every week or every two weeks.

The expert explained that the child was not a confrontational type of individual and that "[s]he tends to withdraw and retreat and literally will shut down." The expert continued, "She will get a little tearful, but then she tightens herself up so that this is as far as I'm going to go and I'm not going any further."

Evidence was introduced during the hearing that the child was with Father when he received Mother's letter notifying him of her intent to relocate to California. Father testified that the child broke down when she learned about the letter. There was also evidence that

the child broke down in church the following day and that she broke down again at school. Father testified that whenever he tries to discuss the possible move, his daughter "locks up and breaks down."

Mother testified that her children did not express any stress to her about moving to California initially, but that "once things started coming out" she spoke with them about the possible move. Mother was aware her daughter was meeting with the psychologist who testified at the hearing, and Mother in fact brought the child in to see the psychologist on occasion.

Mother contends the facts of this case are no different from the facts of *Mann v. Mann*, 299 S.W.3d 69 (Tenn. Ct. App. 2009), and that this court should reach the same result as the Court of Appeals did in that case by permitting Mother to relocate with the parties' daughter. Whereas both this case and *Mann v. Mann* share some factual similarities, neither party in *Mann v. Mann* introduced expert testimony regarding the effect of the move on the child at issue. In both cases the mother was relocating more than one hundred miles away from the father, and the children in both cases were faced with leaving classmates, friends, and their fathers.

The court in *Mann* explained that the father was required to present affirmative evidence that the move would pose a specific threat of harm before it could make such a finding. *Id.* at 76. In the absence of such affirmative evidence, the *Mann* court concluded there was no basis to deny the mother the opportunity to relocate with her children. *Id*. at 76-77.

In this case, however, unlike *Mann v. Mann*, Father presented affirmative evidence in the form of expert testimony that the move would pose a specific threat of serious harm to the child if she relocated to California with Mother. Mother did not object to Father's expert at trial, and she had ample opportunity to cross examine her. Moreover, Mother did not retain an expert to testify that relocating to California would not pose a threat of specific and serious harm to the child, as she could have done.

Immediately following the hearing the trial court stated the following in open court:

> What we boil down to is, whether this specific harm that we have is just the fact that there's going to be some temporary unhappiness from moving. That's a difficult thing for the Court to rule on. I have no way of knowing. I sort of have to rely on [the expert]. [The expert] thinks that's a significant

problem. The child's reactions, evidentially, she's had when this first started, she broke down when she received the letter and she had a breakdown at church, she had a breakdown at the parking lot at school, she won't talk to [the expert] about it because she wants to put it out of her mind. I think that is a little bit more than just the fact that she's having a little trouble adjusting to this move.

So I'm going to find that this is a basis to deny the relocation of the child with the mother. And I also think that falls into the realm of what's in the best interest of the child. From what [the expert] had indicated, it's in the best interest of the child to change custody rather than relocate. And think that's an important factor.

Reviewing all the evidence before the trial court, we do not believe the evidence preponderates against the court's finding that the parties' child would suffer a specific and serious harm as a result of relocating to California and that the harm is significantly more involved and serious than the normal temporary unhappiness and adjustment associated with most moves for children.

We now turn to the court's finding that it is not in the child's best interest to relocate to California. Evidence was presented that the child is attached to her older brother, who testified that he is close with his sister and that he intends to remain in Father's house even after high school. There was also evidence that the child gets along well with Father's current wife and her two sons. Both Father and Father's current wife testified about how they all enjoy spending time together and how well everyone gets along. Taking into consideration the expert's testimony together with the other evidence presented at the hearing, we conclude the evidence does not preponderate against the trial court's finding that if Mother relocates to California, it is in the child's best interest to change the primary residential parent from Mother to Father rather than to relocate the child to California.

## CONCLUSION

For the reasons discussed above, we affirm the trial court's judgment. Costs of appeal are assessed against the appellant, Nicolle M. Johnson, for which execution shall issue if necessary.

_____
PATRICIA J. COTTRELL, JUDGE

-8-