IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Submitted on Briefs January 21, 2014

## LISA RAWLINGS REDMON
### v.
## BRENT ALAN REDMON

**Appeal from the McNairy County General Sessions Court
No. 11-DV-79  Van McMahan, Judge**

---

**No. W2013-01017-COA-R3-CV - Filed April 29, 2014**

---

This appeal involves post-divorce parental relocation.  The parties were divorced in Tennessee, and the mother was designated as the primary residential parent for the parties' minor child.  After the divorce, the mother graduated from a nurse practitioner program and obtained a job offer in Mississippi.  She notified the father of her intent to relocate with the parties' child.  The father objected and filed a petition opposing her relocation.  At trial, the father argued that the proposed relocation did not have a reasonable purpose under Tenn. Code Ann. § 36-6-108(d)(1), in that the mother failed to apply for nurse practitioner jobs in Tennessee.  The trial court agreed with the father and denied the mother permission to relocate with the child.  The mother appeals.  We hold that, by failing to submit proof of comparable jobs in Tennessee for which the mother was qualified, the father did not meet his burden of proving that the mother's proposed relocation did not have a reasonable purpose. Therefore, we reverse.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the General Sessions Court is Reversed and Remanded**

HOLLY M. KIRBY, J., delivered the Opinion of the Court, in which DAVID R. FARMER, J., and J. STEVEN STAFFORD, J., joined.

Angela Snider and Gayra M. Hall, Jackson, Tennessee, for Appellant Lisa Rawlings Redmon
George Douglas Norton, Jr., Selmer, Tennessee, for Appellee Brent Alan Redmon

# OPINION

## FACTS AND PROCEEDINGS BELOW

Appellant Lisa Rawlings Redmon ("Mother") and Appellee Brent Alan Redmon ("Father") were married and had one child, a daughter born in 2008. The family lived in McNairy County, Tennessee.

The parties divorced in October 2011. The divorce court designated Mother as the primary residential parent. Mother was awarded 254 days per year of residential parenting time and Father 111 days.

At the time of the parties' divorce, Mother was working for a hospital making $44,000 per year, and also attending a nurse practitioner program at Union University in Jackson, Tennessee. After the divorce, Mother continued to reside in McNairy County, as did Father.

In anticipation of her upcoming graduation from the nurse practitioner program in December 2012, Mother began looking for employment opportunities. In November 2012, Mother sent Father a certified letter proposing that she relocate to Oxford, Mississippi with the parties' daughter, for employment as a nurse practitioner and also to live closer to her family.

Father filed a timely objection to Mother's proposed relocation in the General Sessions Court of McNairy County, as well as a petition to modify the parties' parenting plan. In his petition to modify, Father asserted that there had been a material change in circumstance that warranted a modification of the parties' parenting plan.

In March 2013, the trial court held a hearing on Mother's request for permission to relocate with the child and Father's petition to modify the parenting plan.[1] The trial court heard testimony from both parties and from the maternal and paternal grandmothers as well.

Mother testified at the outset. She said that she had been offered a job in Oxford, Mississippi as a nurse practitioner, with a starting salary of $80,000, almost doubling her salary at the time of the parties' divorce. In addition, Mother said that her sister lived in Oxford. She testified that her parents owned homes in McNairy County, Oxford, and Florida; they

---

[1] For reasons that do not appear in the record, the transcript for the first part of the hearing is not in the appellate record. Mother submitted a statement of the evidence in lieu of a transcript, and the record contains no indication that Father objected to it. Tenn. R. App. P. 24(c). Consequently, we consider both the transcript and, for the portion of the hearing for which there is no transcript, we consider the statement of the evidence submitted by Mother.

planned to make the Oxford home their permanent home.[2]  For these reasons, Mother said, she was asking the trial court for permission to relocate to Oxford with the parties' daughter. She explained that the increase in salary she would receive with the Oxford job would enable her to save for their daughter's education and pay for extracurricular activities in Oxford that she had not been able to afford.  Mother told the trial court that she had identified a house in Oxford that she wished to buy for herself and the parties' daughter, located 92 miles from her McNairy County home.

In her testimony, Mother responded to questions about job opportunities as a nurse practitioner, particularly in the McNairy County area.  Describing the process of looking for a nurse practitioner position, Mother said: "[Y]ou don't just go put in applications everywhere.  It's more like a who-you-know type thing and making connections and talking to people . . . . You have to know somebody . . . [and] know where the openings are going to be."  Mother testified that she tried to find a position in either Jackson or McNairy County, closer to Father's home and her own home at the time of trial, but found no job openings as advantageous as the job she was offered in Oxford.  Mother conceded that she did not talk to any physicians in McNairy County, but said that she spoke to all ten of the cardiologists at the Jackson, Tennessee hospital where she was working.  Mother also spoke to several nurse practitioners in the area, including Donna Norris, a nurse practitioner in McNairy County.  Ms. Norris, Mother said, "kind of [ran] around for me and asked if there were any opportunities."  The only clinic in McNairy County that Mother personally contacted was the clinic where Donna Norris worked.  Mother said that she searched several job websites on the Internet, but the McNairy County area jobs listed on them were either temporary or included qualifications she did not meet.  Mother did not apply for any jobs in West Tennessee or in any Mississippi cities close to Tennessee, but she maintained, "I did what I could have done for this area."

Mother acknowledged that Father's relationship with their daughter is important; she claimed that she was willing to be flexible and was "committed to them maintaining a relationship." Mother said, "I don't want to take her away from him.  That's not what this is about.  I want them to be able to be able to maintain their bond and all that."  She said that she would compromise with Father and his relatives to ensure that the child could continue to participate in the traditions and gatherings for Father's family.

Mother's mother, Carol Rawlings, also testified.  Ms. Rawlings said that she and her husband are both retired, so they are available and able to help with childcare whenever needed.  Ms. Rawlings confirmed that, at the time of trial, their McNairy County house was on the market and that they were planning to move permanently to their Oxford home as soon as the

---

[2]Mother said that, at the time of trial, her parents' McNairy County home was on the market to sell.

McNairy County home sold.[3] Ms. Rawlings said that she is close to the parties' child, and she and her husband would continue to be part of the child's life if the trial court permitted Mother to relocate to Oxford.

Father testified as well. Many members of Father's family and extended family live in McNairy County, Father said, and they play a large role in the life of the parties' daughter. He testified that the parties' daughter often stays with Father's mother on weekends and they regularly have family dinners with cousins. Father asserted that Mother's proposed relocation would preclude him from having parenting time during the week or participating in the child's weekday activities.

Father claimed that Mother's proposed move did not have a reasonable purpose, that there was no reason for Mother to move with their child "other than because she wants to do it." Asked what proof he had that Mother's request to relocate was unreasonable, Father responded, "No proof other than the child." Father did not know whether Mother had applied for any nurse practitioner jobs in Tennessee or the surrounding area, but felt that Mother asking another nurse practitioner to do her job search for her was not sufficient. When asked if he knew of any available nurse practitioner jobs in or near Jackson, Tennessee, Father acknowledged that he had not personally searched for one, but said "surely" there were such jobs.[4]

Father's mother, Nancy Hopkins, corroborated Father's testimony that the parties' daughter has a close relationship with Father's family and extended family in McNairy County. Ms. Hopkins said she often went to the child's school activities, but if the child were to move to Oxford with Mother, it would be more difficult for Ms. Hopkins to see the child or go to her school activities. Ms. Hopkins acknowledged that Mother becoming a nurse practitioner would benefit the child, but she wished Mother would find a nurse practitioner job closer to their family.

After the hearing, the trial court sent a letter ruling to counsel and then entered a written order in March 2013. In the order, the trial court held that, under Tennessee Code Annotated § 36-6-108(d), Mother's proposed relocation "did not have a reasonable purpose." It found that Mother "did not make reasonable efforts to find a similar job closer to home; . . . [she]

---

[3]Ms. Rawlings said that she and her husband spend time at their Florida home, but the Oxford home would be their primary residence.

[4]During Father's testimony, his attorney made an offer of proof of a printout from a website called "Simply Hired," purportedly showing nurse practitioner jobs available in the Jackson, Tennessee area. This document was not made a part of the appellate record so we cannot consider it.

did not apply for any jobs in West Tennessee, Corinth or Tupelo, Mississippi." The trial court noted that Father is "very active in the child's life and daily activities," referred to the loss of Father's weekday parenting time if the move were permitted, and said that Mother's proposed relocation to Oxford "would limit [F]ather's involvement in the child's life." The trial court found as well that Father's family was a "major part[]" of the child's life that would be "severely restricted" if the relocation were permitted.

For these reasons, the trial court denied Mother's request for permission to relocate to Oxford with the parties' child. It also denied Father's petition to modify the parenting arrangement. Mother now appeals.

## ISSUE ON APPEAL AND STANDARD OF REVIEW

On appeal, Mother contends that the evidence preponderates against the trial court's finding that the proposed relocation did not have a reasonable purpose. She argues that Father bore the burden of proving that the relocation did not have a reasonable purpose, and that he did not meet the required burden of proof.[5]

We review the trial court's findings of fact *de novo* on the record, presuming those findings to be correct unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); *Robinson v. Robinson*, No. M2003-02289-COA-R3-CV, 2005 WL 1541861, at \*2 (Tenn. Ct. App. June 30, 2005). For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect. *Mann v. Mann*, 299 S.W.3d 69, 71 (Tenn. Ct. App. 2009) (citing *Walker v. Sidney Gilreath & Assocs.*, 40 S.W.3d 66, 71 (Tenn. Ct. App. 2000). We give great weight to the trial court's credibility determinations, as the trial court is in the best position to assess the demeanor of the witnesses. *Robinson*, 2005 WL 1541861, at \*2 (citing cases); *Mitchell v. Mitchell*, No. M2004-00849-COA-R3-CV, 2005 WL 1521850, at \*1 (Tenn. Ct. App. June 27, 2005). Questions of law are reviewed "under a pure *de novo* standard of review, according no deference to the conclusions of law made by the lower courts." *Johnson v. Johnson*, 165 S.W.3d 640, 645 (Tenn. Ct. App. 2004) (quoting *Southern Constructors, Inc. v. Loudon County Bd. Of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001)).

## ANALYSIS

"One of the most common post-divorce flashpoints occurs when the primary residential parent decides to move with his or her child or children to another city or state. The farther the move, the more intense the opposition because of the move's effect on visitation and the

---

[5]Father does not appeal the trial court's denial of his petition to modify the parenting plan.

ability of the other parent to foster and maintain an appropriate relationship with his or her child or children." ***Collins v. Coode***, No. M2002-02557-COA-R3-CV, 2004 WL 904097, at *2 (Tenn. Ct. App. Apr. 27, 2004).

In this appeal, Mother contends that she presented the trial court with a reasonable purpose for the proposed relocation. She notes that the job she was offered in Oxford, Mississippi included a substantial increase in income, nearly doubling her income at the time of trial. Mother argues that Father bore the burden of proving the proposed relocation did not have a reasonable purpose and emphasizes that he presented no proof of available permanent nurse practitioner positions for which Mother was qualified in the McNairy County or Jackson, Tennessee area.

In response, Father contends that the fact that Mother did not apply for any jobs in the counties near Father's home is "fatal" to her proposed relocation, because it undermines Mother's assertion that she could only find suitable employment in Oxford, Mississippi. Father asserts that a parent who seeks to relocate cannot rely on career advancement or salary increase as a reasonable purpose for the move if the relocating parent has not formally searched for a comparable career opportunity within a reasonable driving distance from the other parent.

In Tennessee, parental relocation is governed by statute, Tennessee Code Annotated § 36-6-108. The framework in the statute sets out different standards for relocation, depending on whether the parents spend substantially equal intervals of time with their child. Under the statute, when parents spend substantially equal amounts of time with the child, "[n]o presumption in favor of or against the request to relocate with the child shall arise," and the trial court must determine whether the relocation is in the child's best interest. Tenn. Code Ann. § 36-6-108(c).

Where, as here, the parents do not spend substantially equal intervals of time with the child, Section 36-6-108 provides for a much different standard. Subsection (d)(1) of the statute provides:

> If the parents are not actually spending substantially equal intervals of time with the child and the parent spending the greater amount of time with the child proposes to relocate with the child, the other parent may, within thirty (30) days of receipt of the notice, file a petition in opposition to removal of the child. The other parent may not attempt to relocate with the child unless expressly authorized to do so by the court pursuant to a change of custody or primary custodial responsibility. The parent spending the greater amount of

time with the child *shall be permitted* to relocate with the child *unless the court finds*:

> (A) *The relocation does not have a reasonable purpose*;
>
> (B) The relocation would pose a threat of specific and serious harm to the child that outweighs the threat of harm to the child of a change of custody; or
>
> (C) The parent's motive for relocating with the child is vindictive in that it is intended to defeat or deter visitation rights of the non-custodial parent or the parent spending less time with the child.

Tenn. Code Ann. § 36-6-108(d)(1) (emphasis added). Thus, where the parents do not spend substantially equal intervals of time with the child, Tennessee Code Annotated § 36-6-108 has "a legislatively mandated presumption in favor of [the] relocating custodial parent. . . ." *Collins*, 2004 WL 904097, at *2; *see also Rudd v. Gonzales,* No. M2012-02714-COA-R3-CV, 2014 WL 872816, at *7 (Tenn. Ct. App. Feb. 28, 2014). "[T]he relocation statute mandates a grant of permission to relocate unless the parent opposing relocation proves at least one of the three enumerated grounds. The court does not reach the issue of whether the move is in the best interest of the child unless one of the grounds is proven." *Webster v. Webster*, No. W2005-01288-COA-R3-CV, 2006 WL 3008019, at *13 (Tenn. Ct. App. Oct. 24, 2006). The parent opposing the relocation bears the burden of proof to establish one of these three grounds, and if he or she fails to do so, the relocation must be permitted. *Webster*, 2006 WL 3008019, at *14; *see also Kawatra v. Kawatra*, 182 S.W.3d 800, 803 (Tenn. 2005); *In re Iyana R.W.*, No. E2010-00114-COA-R3-JV, 2011 WL 2348458, at *3 (Tenn. Ct. App. June 8, 2011).

In this appeal, the only ground at issue is whether Mother's proposed relocation has a "reasonable purpose." Tenn. Code Ann. § 36-6-108(d)(1)(A). "There are no bright-line rules with regard to what constitutes a reasonable purpose for a proposed relocation." *Rudd,* 2014 WL 872816, at *11. "[D]eterminations concerning whether a proposed move has a reasonable purpose are fact-intensive and require a thorough examination of the unique circumstances of each case." *Lima v. Lima*, No. W2010-02027-COA-R3-CV, 2011 WL 3445961, at *7 (Tenn. Ct. App. Aug. 9, 2011) (citing *In re Spencer E.*, No. M2009-02572-COA-R3-JV, 2011 WL 295896, at *11 (Tenn. Ct. App. Jan. 20, 2011)). In assessing whether a proposed relocation has a reasonable purpose, courts take into account both economic and non-economic factors. *Rudd,* 2014 WL 872816, at *12. Regardless, "the 'reasonable purpose' of the proposed relocation must be a significant purpose, substantial when weighed

against the gravity of the loss of the non-custodial parent's ability 'to participate fully in their children's lives in a more meaningful way.' " **Webster,** 2006 WL 3008019, at *14 (quoting **Aaby v. Strange**, 924 S.W.2d 623, 631 (Tenn. 1996) (White, J., dissenting)).

Here, Mother presented proof that the proposed relocation would allow her to accept a job position with a significant increase in compensation, in the field in which she trained. Mother testified that the Oxford job would permit her to pay for activities for the parties' child that she cannot currently afford. "Doubtless, relocation because of a better job opportunity, greater salary, and career advancement opportunities, establishes a 'reasonable purpose' within the meaning of the statute." **Rudd,** 2014 WL 872816, at *11 (quoting **Butler v. Butler**, No. M2002-00347-COA-R3-CV, 2003 WL 367241, at *2 (Tenn. Ct. App. Feb. 20, 2003)). **See also King v. King**, No. M2009-01722-COA-R3-CV, 2010 WL 2730600, at *8; 2010 Tenn. App. LEXIS 436, at *21 (Tenn. Ct. App. July 9, 2010) (citing **Dye v. Fowler**, No. M2006-01896-COA-R3-CV, 2007 WL 1515140, at *3; 2007 Tenn. App. LEXIS 331, at *9 (Tenn. Ct. App. May 23, 2007)); **Roberts v. Roberts**, No. E2005-01175-COA-R3-CV, 2005 WL 2860199, at *6; 2005 Tenn. App. LEXIS 685, at *18-19 (Tenn. Ct. App. Oct. 31, 2005). Secondarily, Mother testified that her sister lives in Oxford, and the evidence established that Mother's parents planned to sell their McNairy County house and make the Oxford residence their permanent home. These non-economic reasons also factor into the overall calculus of whether Mother has stated a reasonable purpose for the proposed relocation. **Rudd,** 2014 WL 872816, at *12.

The trial court below held that the purpose for Mother's proposed relocation was not reasonable because Mother "did not make reasonable efforts to find a similar job closer to home; . . . [she] did not apply for any jobs in West Tennessee, Corinth or Tupelo, Mississippi." In her testimony, Mother outlined her efforts to find a nurse practitioner position in the McNairy County area and said that she did not find any permanent job positions comparable to the Oxford job for which she was qualified. The proof supports the trial court's finding that Mother did not actually submit an application for any positions in Tennessee or nearby Mississippi locations.

Father argues that, so long as he has shown that Mother did not look "hard enough" for a job nearer McNairy County, he has carried his burden of proving lack of reasonable purpose for Mother's proposed relocation. In support, he cites this Court's opinion in another parental relocation case, **Hudson v. Hudson**, No. M2008-01143-COA-R3-CV, 2009 WL 3631017; 2009 Tenn. App. LEXIS 749 (Tenn. Ct. App. Nov. 3, 2009). In **Hudson**, the mother sought to move from Nashville, Tennessee to Hopkinsville, Kentucky; she claimed that the cost of living in Hopkinsville was lower and the job available to her in Hopkinsville had more flexible hours than similar jobs in Nashville. In the course of its analysis, the appellate court in **Hudson** stated:

> We also agree with Father that the economic reasons for relocation presented by Mother are insufficient. It is undisputed that Mother never looked for employment in Nashville. This fact alone is fatal to Mother's contention that she could only find suitable employment in Hopkinsville. Because of this, Father is correct in his assertion that there are no other economic factors to couple with the lower cost of living to constitute a "reasonable purpose."

*Hudson,* 2009 WL 3631017, at *10.[6] Based on this statement in *Hudson*, Father argues, this Court should affirm the trial court's holding that Mother did not state a reasonable purpose for the proposed move to Oxford.

We note that the excerpt from *Hudson* on which Father relies is *dicta.* The appellate court in *Hudson* affirmed the trial court's decision to permit the mother to move to Hopkinsville for reasons unrelated to her job, such as support from the mother's family in the Hopkinsville area and the father's hostile and controlling behavior toward the mother. *Id* at *5, *10. Moreover, at trial, the father in *Hudson* presented testimony from expert witnesses familiar with the mother's skills who opined that there was a "very high probability" that the mother would have been able to find a better job in Nashville had she looked. *Id.* at *3. So the *Hudson* court's comment – that the mother never looked for employment in Nashville – must be considered against the backdrop of the father's evidence that suitable jobs in Nashville were available to her had she done so.

Father's position is at odds with the established burden of proof in parental relocation cases. The appellate court in *Hudson,* on which Father relies, acknowledged that the party who opposed the relocation bore the burden of proving that the proposed relocation did not have a reasonable purpose. *Hudson,* 2009 WL 3631017, at *6. Indeed, this is well-established. *See, e.g., Rudd,* 2014 WL 872816, at *10 (citing *Webster,* 2006 WL 3008019, at *14; *Mann*, 299 S.W.3d at 74). "[T]he burden was not on [the relocating parent] to prove the reasonableness of her planned relocation; to the contrary, the burden was upon [the parent opposing relocation] to establish that the relocation was not for a reasonable purpose." *Lima*, 2011 WL 3445961, at *8.

In the case at bar, comparison of Mother's job opportunities in the McNairy County area to Mother's job offer in Oxford is relevant to the question of whether her proposed relocation is for a reasonable purpose. "[R]elevant economic factors that are typically considered

---

[6]The Tennessee Supreme Court granted permission to appeal the intermediate appellate court's decision in *Hudson*. However, after Mother later remarried and moved to Sumner County, Tennessee, the Supreme Court dismissed the appeal as moot. *Hudson v. Hudson*, 328 S.W.3d 863, 865-66 (Tenn. 2010).

include, without limitation, the relative significance of the increase, the cost of living in the proposed location compared to the present location, . . . opportunity for career advancement and economic betterment of the family unit." *Slaton v. Ray*, No. M2004-01809-COA-R3-CV, 2005 WL 2756076, at \*3 (Tenn. Ct. App. Oct. 24, 2005). As the party with the burden of proving lack of reasonable purpose, however, the onus was on Father to produce evidence from which such a comparison could be made. Mother testified that nurse practitioner job positions available in the general McNairy County and Jackson, Tennessee areas were not suitable for her, that they were either temporary positions or included requirements she did not meet. In response, Father proffered only his own testimony criticizing Mother for not applying for nurse practitioner positions near McNairy County and speculating that "surely" there were such nurse practitioner jobs available in his area.[7] This does not suffice to meet his burden of proving that Mother's proposed relocation does not have a reasonable purpose. *Lima,* 2011 WL 3445961, at \*8; *Mann*, 299 S.W.3d at 74; *Webster*, 2006 WL 3008019, at \*14.

It is well-established that increased pay and enhanced career opportunities constitute a reasonable purpose for a proposed relocation. *Rudd,* 2014 WL 872816, at \*11; *Butler*, 2003 WL 367241, at \*2; *King*, 2010 WL 2730600, at \*8; 2010 Tenn. App. LEXIS 436, at \*21; *Dye*, 2007 WL 1515140, at \*3; 2007 Tenn. App. LEXIS 331, at \*9; *Roberts*, 2005 WL 2860199, at \*6; 2005 Tenn. App. LEXIS 685, at \*18-19.

Under all of the circumstances of this case, we must conclude that the evidence preponderates against the trial court's finding that the proposed relocation does not have a reasonable purpose. Therefore, this finding is reversed. The trial court found no other ground for rejecting Mother's request to relocate.

Tennessee's parental relocation statute does not authorize the court to reach the issue of the best interest of the child unless and until the parent opposing relocation has proven by a preponderance of the evidence one of the enumerated grounds. Under the statute, relocation with the child "shall be permitted" unless the court finds one of the enumerated grounds. Tenn. Code Ann. § 36-6-108(d)(1).

As noted by the trial court, Mother's relocation will undoubtedly have a significant effect on Father's ability to meaningfully participate in his daughter's life. "Parental relocation cases are frequently heartbreaking, with profound competing considerations and impact on both parents and the subject children." *Rutherford v. Rutherford*, 416 S.W.3d 845, 855 (Tenn.

---

[7]The record indicates that Father's counsel proffered a computer printout of some sort on a job website called "Simply Hired." As noted above, the printout was not made part of the record, so we cannot consider it.

Ct. App. 2013) (Kirby, J., concurring separately). Tennessee's statute, however, is clear; if the parent who opposes relocation fails to meet the burden of proving one of the three enumerated grounds, the court is obliged to grant permission for the relocation. *Webster*, 2006 WL 3008019, at *14.

Accordingly, we must reverse the trial court's denial of Mother's request for permission to relocate with the parties' daughter. The trial court is directed to grant Mother's request for permission to relocate, and the cause is remanded for further proceedings such as modification of the parties' parenting schedule to accommodate Mother's relocation. All other issues are pretermitted by this decision.

## CONCLUSION

The decision of the trial court is reversed and the cause is remanded for further proceedings consistent with this Opinion. Costs on appeal are assessed against Appellee Brent Alan Redmon, for which execution may issue if necessary.

_____
HOLLY M. KIRBY, JUDGE