# IN THE COURT OF APPEALS OF TENNESSEE
# AT KNOXVILLE
## July 1, 2015 Session

### JONATHAN MACKEY v. ELIZABETH ANNE MAYFIELD

**Appeal from the Circuit Court for Hamilton County**
**No. 12D1328      L. Marie Williams, Judge**

_____

### No. E2014-02052-COA-R3-CV-FILED-OCTOBER 8, 2015

_____

Father, the primary residential parent with substantially more parenting time, sought to relocate to Wisconsin with the parties' minor son. After learning that Father was about to relocate, Mother filed a petition in opposition to the relocation alleging that she had not received notice of Father's intent to relocate as required by Tenn. Code Ann. § 36-6-108(a) and contending that relocation was not for a reasonable purpose and not in the child's best interest. After a hearing on the issue of notice, the trial court found that Mother received certified mail from Father more than 30 days prior to commencing this action, but it did not contain notice of Father's intent to relocate; thus, the court allowed Mother's challenge to the relocation to proceed. *See* Tenn. Code Ann. § 36-6-108(g). Following a two-day trial on Mother's petition, the court found that the testimony of Father and his wife was not credible, that Father did not have a reasonable purpose to relocate, and that relocation was not in the child's best interest. The court also entered an order prohibiting Father from relocating with the child and designating Mother as the primary residential parent. Father appealed, contending that the trial court erred when it found that Mother had not received notice of his intent to relocate, and that the relocation did not have a reasonable purpose and was not in the child's best interest. Because the evidence does not preponderate against the trial court's findings, we affirm the judgment of the trial court in all respects.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed

FRANK G. CLEMENT, JR., P.J., M.S., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., C.J., and JOHN W. MCCLARTY, J. joined.

Lucy C. Wright and Carol M. Ballard, Chattanooga, Tennessee, for the appellant, Jonathan Mackey.

Sandra J. Bott, Chattanooga, Tennessee, for the appellee, Elizabeth Anne Mayfield.

Michele L. Coffman, Chattanooga, Tennessee, Guardian Ad Litem.

**OPINION**

Jonathan Mackey ("Father") and Elizabeth Anne Mayfield ("Mother") are the parents of a ten-year-old son born in April 2005 in the state of Georgia. The parties were never married, and Father's parentage was established by a consent order filed in the Superior Court for Catoosa County, Georgia, in March 2010. This consent order was amended twice, and ultimately Father was given primary custody of the child.

By 2009, Father had moved to Tennessee with the child and married Shannon Mackey ("Ms. Mackey"). By January 2011, Mother had also moved to Tennessee. On June 28, 2012, Father filed a petition to enroll the consent orders in Tennessee. Mother did not respond to this petition, and a default judgment was entered against her in September 2012. On October 26, 2012, the Hamilton County Circuit Court ("trial court") enrolled the consent orders in Tennessee.

In February 2013, Father and Ms. Mackey decided to move to Wisconsin with the child so that Ms. Mackey could take care of her mother. Father claims he sent Mother written notice of his intent to relocate as required by Tenn. Code Ann. § 36-6-108 on March 20, 2013. Under this statute, Mother was required to file any opposition to the relocation within 30 days from her receipt of notice. *See* Tenn. Code Ann. § 36-6-108(g) (2013).

On June 3, 2013, more than 30 days after Father claims he mailed Mother notice, Mother filed a petition in opposition to Father's relocation. The petition admitted that Mother signed for and received documents that Father sent her but stated that those documents were not related to Father's relocation. The petition requested that Mother be designated the primary residential parent because a material change in circumstances had occurred and the parenting plan was no longer in the child's best interest.

On June 11, 2013, the trial court held a hearing to determine whether Mother received notice of Father's intent to relocate. While there is no transcript of this hearing, both parties submitted statements of the evidence pursuant to Tenn. R. App. P. 24(c). The trial court determined that Mother's statement of the evidence was more accurate than Father's and "true in all material respects." Accordingly, we will only consider the statement of the evidence approved by the trial court. *See* Tenn. R. App. P. 24(e).[1]

---

[1] When multiple parties submit different statements of the evidence, the trial court has the responsibility of settling any differences between them and ensuring that the record accurately discloses

(continued . . .)

Ms. Mackey and Father testified at the notice hearing. Ms. Mackey testified that she helped Father write a relocation letter to Mother and sent it by certified mail. Father corroborated Ms. Mackey's testimony and produced an email exchange that he had with Mother. The emails indicated that Mother received a letter from Father but that the letter did not say anything about relocating. Father also testified that Mother came to his house to ask for a copy of the notice and that he did not give her one. Neither party called Mother to testify.

On June 17, 2013, the trial court issued an order stating that, although there had been "a great deal of testimony . . . with respect to the preparation and mailing of a letter on March 20," there was little evidence that Mother had received notice of Father's intent to move. Because it found that Mother did not receive notice of Father's intent to relocate, the trial court allowed Mother's petition in opposition to proceed. Father filed a motion to reconsider this ruling, which was denied. The order denying Father's motion to reconsider also stated that Father "shall continue to be restrained and enjoined from removing the minor child . . . from the jurisdiction of [the trial court] pending further Order of the Court."

Despite this order and the ongoing proceedings in Tennessee, Father returned to the Georgia Court in an attempt to secure permission to relocate.[2] On October 9, 2013, Father appeared before the Georgia Court and obtained an ex parte order allowing him to relocate to Wisconsin. There is no indication he informed the Georgia Court of the proceedings in Tennessee. After receiving permission to relocate from the Georgia Court, Father picked the child up from school early and drove to Wisconsin.

On October 14, 2013, Mother filed a petition for emergency jurisdiction with the trial court because she had learned about the proceedings in the Georgia Court. Father

what occurred at trial. *See* Tenn. R. App. P. 24(c), (e). "Absent extraordinary circumstances, the determination of the trial court is conclusive." Tenn. R. App. P. 24(e). Situations that constitute "extraordinary circumstances" include the death of a judge or evidence of bias. *Williams v. Williams*, No. M2013-01910-COA-R3-CV, 2015 WL 412985, at *6 (Tenn. Ct. App. Jan. 30, 2015) (citing *Artrip v. Crilley*, 688 S.W.2d 451, 453 (Tenn. Ct. App. 1985)), *perm. app. denied* (June 12, 2015). Neither of these circumstances is at issue here, and Father does not make any argument to the contrary. Therefore, the trial court's determination that Mother's statement of the evidence was more accurate than Father's is conclusive on appeal.

[2] Due to some procedural maneuvering not relevant here, the trial court vacated some of its prior orders in this case. Based on the vacated orders, Father testified that he thought the case in Tennessee had been "thrown out," and that he could return to the Georgia Court. This contention is disingenuous because Father returned to the Georgia Court *before* the trial court entered an order vacating some of its previous orders.

voluntarily dismissed his ex parte petition with the Georgia Court on October 21, 2013, but did not return the child to Tennessee. Mother filed a motion seeking an order compelling Father to return the child to Tennessee, and the trial court granted that motion in November 2013. Father complied with this order and returned to Tennessee with the child.

The trial of Mother's petition in opposition to Father's relocation occurred on June 25-27, 2014. Several witnesses testified, including Mother, Father, and Ms. Mackey. The proof revealed that the child had lived in the Chattanooga area[3] for nine years, that both Mother and Father had relatives who lived nearby, and that the child had developed relationships with both Mother's and Father's relatives in Tennessee. Although the child visited Wisconsin about twice a year, the only family members there were his stepsister and Ms. Mackey's relatives. The proof also indicated that the distance from Tennessee to Wisconsin was over 700 miles and that Mother did not have the means to travel to Wisconsin to visit the child.

Ms. Mackey testified that she had to remain in Wisconsin in order to care for her mother. She described her mother's health problems and stated that she held a power of attorney for her mother.[4] Ms. Mackey testified that she had several relatives in Wisconsin, including two siblings who lived about 20 minutes from her mother. She stated that these siblings were not capable of caring for her mother because they were immature and did not hold powers of attorney for their mother.

Ms. Mackey also testified that her mother had visited Tennessee on several occasions and helped renovate the Mackeys' house so that they could rent it while they lived in Wisconsin.[5] Ms. Mackey's trial testimony was that her mother was unable to paint but helped renovate by instructing and advising other workers. Her deposition testimony, however, was not as specific about her mother's participation in the renovation and only indicated that her mother had worked on the renovation.

Father and Ms. Mackey also testified about the economic opportunities in Wisconsin. Ms. Mackey was currently unemployed but had worked for a painting company in the past. Father had received unpaid training at the same company, which

---

[3] The record is not clear about exactly when Father moved to Chattanooga with the child. However, prior to moving to Tennessee, Father and the child lived in and around Dalton, Georgia, which is only about 33 miles from Chattanooga.

[4] Notably, the power of attorney included in the record concerns the management of financial affairs and does not purport to give Ms. Mackey authority to make health care decisions for her mother.

[5] Indeed, Ms. Mackey's mother was in Tennessee at the time of trial.

- 4 -

later employed Father for an unspecified period of time in 2013 at a rate of $20 to $25 an hour. Although Father testified that he had not been terminated from the position at the painting company, it was unclear whether the position was available to him.

On July 25, 2014, the trial court entered an order finding that the relocation did not have a reasonable purpose and was not in the best interest of the parties' child. The trial court found that both Father and Ms. Mackey's testimony regarding the purpose for relocation "had serious credibility issues." Specifically, the trial court found that Ms. Mackey "evaded questions about her mother's health," and that "her answers in the deposition and on cross were conflicting and/or misleading." The court also found that Father was evasive when cross-examined and that his demeanor was "substantially less than persuasive." Consistent with these credibility findings, the trial court found that the proposed relocation was for the convenience of Ms. Mackey rather than for a reasonable purpose.

The trial court found that relocation was not in the child's best interest because the environment in Wisconsin "does not afford him the same stability as the environment in which he has grown up," and because the child had formed relationships with both Mother's and Father's relatives near Chattanooga. The trial court was also deeply concerned about Father's ability and willingness to foster the relationship between Mother and the child because he had failed to abide by court orders previously and sought an order permitting relocation from the Georgia Court during the course of litigation in Tennessee. The trial court found that Mother's credibility was "substantially greater" than Father's, and that she testified credibly about her desire for the child to have a relationship with Father. The court stated that it would be "very easy for [Father] to completely undermine the relationship" between Mother and the child and found that Father was "not likely to comply with any new visitation arrangement once out of the jurisdiction if it did not meet with his desires."

Based on its findings, the trial court enjoined Father from relocating with the child to Wisconsin, designated Mother the primary residential parent, and altered the parenting schedule accordingly. Father appealed.

## ANALYSIS

Father argues that he was entitled to relocate without court approval because Mother's petition in opposition to his relocation was not filed within 30 days of her receipt of the relocation notice as required by Tenn. Code Ann. § 36-6-108(g). Father also argues that the trial court erred when it found that the relocation did not have a

reasonable purpose and was not in the child's best interest.[6] For her part, Mother argues that she should be awarded attorney's fees for the litigation in the trial court and for the appeal to this court. We will address each issue in turn.

STANDARD OF REVIEW

In cases such as this where the action is "tried upon the facts without a jury," Tenn. R. Civ. P. 52.01 provides that the trial court "shall find the facts specially and shall state separately its conclusions of law and direct the entry of the appropriate judgment." Compliance with the Rule 52.01 mandate enhances the authority of the trial court's decision by providing an explanation of the court's reasoning, *see In re Zaylen R.*, No. M2003-00367-COA-R3-JV, 2005 WL 2384703, at \*2 (Tenn. Ct. App. Sept. 27, 2005), and facilitates appellate review by "affording a reviewing court a clear understanding of the basis of a trial court's decision." *In re Estate of Oakley*, No. M2014-00341-COA-R3-CV, 2015 WL 572747, at \*10 (Tenn. Ct. App. Feb. 10, 2015) (citing *Lovlace v. Copley*, 418 S.W.3d 1, 35 (Tenn. 2013)), *no perm. app. filed.* In the absence of findings of fact and conclusions of law, "this court is left to wonder on what basis the court reached its ultimate decision." *Id.*

We review a trial court's factual findings de novo, accompanied by a presumption of the correctness of the finding of fact, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *see Boarman v. Jaynes*, 109 S.W.3d 286, 289-90 (Tenn. 2003). For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect. *Watson v. Watson*, 196 S.W.3d 695, 701 (Tenn. Ct. App. 2005).

Additionally, we give great weight to the trial court's findings regarding the credibility of witnesses. *Estate of Walton v. Young*, 950 S.W.2d 956, 959 (Tenn. 1997). This is because "[u]nlike appellate courts, trial courts are able to observe witnesses as they testify and to assess their demeanor, which best situates trial judges to evaluate witness credibility." *Wells v. Tenn. Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn. 1999). Accordingly, appellate courts do not usually second-guess a trial court's credibility determinations unless there is "concrete, clear, and convincing evidence to the contrary." *In re Adoption of Kleshinski*, No. M2004-00986-COA-R3-CV, 2005 WL 1046796, at \*21 (Tenn. Ct. App. May 4, 2005) (quoting *Mitchell v. Archibald*, 971 S.W.2d 25, 29 (Tenn. Ct. App. 1998)).

The presumption of correctness in Tenn. R. App. P. 13(d) applies only to findings of fact, not to conclusions of law. *See Blair v. Brownson*, 197 S.W.3d 681, 683-84 (Tenn.

---

[6] Father has not appealed the trial court's determination that Mother should be designated the primary residential parent.

- 6 -

2006). Accordingly, no presumption of correctness attaches to the trial court's conclusions of law, and our review is de novo. *Id.*

## I. RELOCATION

When a parent seeks to relocate with his or her minor child outside of Tennessee, that parent must give written notice of the proposed move to the other parent 60 days before the move. Tenn. Code Ann. § 36-6-108(a) (2013). This notice must include the location of the new residence, the reasons for relocation, and a statement that the other parent may file a petition in opposition to the move. *See id.* If the other parent does not file a petition in opposition to the relocation "within thirty (30) days of receipt of the notice" of intent to relocate, then the relocating parent will be allowed to move without any further inquiry by the trial court. Tenn. Code Ann. § 36-6-108(g); *see Rutherford v. Rutherford*, 416 S.W.3d 845, 853-54 (Tenn. Ct. App. 2013).

When a timely petition in opposition to the relocation is filed, the trial court must first determine the amount of time the relocating parent actually spends with the parties' child. *See* Tenn. Code Ann. § 36-6-108(c)-(d); *Kawatra v. Kawatra*, 182 S.W.3d 800, 802-03 (Tenn. 2005). In this case it is undisputed that Father was spending a greater amount of time with the child than Mother; accordingly, Tenn. Code Ann. § 36-6-108(d)(1) governs.

Pursuant to this subsection, a statutory presumption in favor of the relocation request arises. *See* Tenn. Code Ann. § 36-6-108(d)(1); *Webster v. Webster*, No. W2005-01288-COA-R3-CV, 2006 WL 3008019, at *8 (Tenn. Ct. App. Oct. 24, 2006). In order to rebut this presumption, the parent opposing relocation must establish that the relocation does not have a reasonable purpose; the relocation would pose a specific and serious threat of harm to the child; or the parent's motive for relocating is vindictive. *See* Tenn. Code Ann. § 36-6-108(d)(1)(A)-(C); *Webster*, 2006 WL 3008019, at *8.

If the trial court finds that none of the three grounds has been established, no further analysis is required, and the court "shall" grant the request to relocate. *See* Tenn. Code Ann. § 36-6-108(d)(1). However, if any of the three grounds is established, the court must determine whether relocation is or is not in the child's best interest. Tenn. Code Ann. § 36-6-108(e) (2013). If the court finds it is not in the best interests of the child to relocate, then the requested relocation must be denied. *Id.*

## A. NOTICE OF INTENT TO RELOCATE

Father contends that we should dismiss Mother's appeal because she did not file a timely petition in opposition after he sent proper notice of his intent to relocate. *See* Tenn. Code Ann. § 36-6-108(g). We disagree.

The trial court conducted an evidentiary hearing on the issue of notice and found that Mother received "something" in the mail from Father on April 3, 2013, but that it was not written notice of Father's intent to relocate. Father contends this was error. Specifically, he insists he proved that Mother received the notice because he presented proof of due mailing, which raises a presumption of receipt. *See In re Adoption of S.A.W.*, No. M2007-01690-COA-R3-PT, 2008 WL 820540, at *1 (Tenn. Ct. App. Mar. 26, 2008).

We have concluded that Father misconstrues the trial court's factual finding on the issue of notice. The court agreed with Father, finding that he mailed something to Mother on the date in question and that Mother received what Father mailed her. Thus, Father received the benefit of the evidentiary presumption that Mother received whatever he mailed to her. However, the factual issue in dispute is not whether Father mailed "something" to Mother on the date in question, it is whether Father included written notice of his intent to relocate in the envelope he mailed.

The trial court specifically found that Mother did not receive written notice of Father's intent to relocate. This finding is supported by the email exchange indicating that Mother received documents in the mail that did not relate to Father's relocation and by Father's own testimony that he refused to give Mother a copy of the notice when she came to his house to ask for one. In addition, this evidence constitutes "[c]redible testimony or other evidence of non-receipt . . . " sufficient to rebut the presumption of receipt. *See id.*

Having determined that the evidence from the notice hearing does not preponderate against the trial court's finding that Mother did not receive written notice from Father of his intent to relocate, we affirm the trial court's determination that Mother's petition was not time barred.

B. REASONABLE PURPOSE

Because Father was spending a greater amount of time with the child than Mother, there was a presumption in favor of allowing him to relocate unless the trial court found that one of the grounds specified in Tenn. Code Ann. § 36-6-108(d)(1)(A)-(C) existed. *See* Tenn. Code Ann. § 36-6-108(d)(1). One of the grounds is that there is no reasonable purpose for the relocation. *See* Tenn. Code Ann. § 36-6-108(d)(1)(A). The trial court found that Father did not have a reasonable purpose for relocating to Wisconsin. Father contends this finding was error.

"There are no bright-line rules with regard to what constitutes a reasonable purpose for a proposed relocation." *Rudd v. Gonzalez*, No. M2012-02714-COA-R3-CV, 2014 WL 872816, at * 11 (Tenn. Ct. App. Feb. 28, 2014), *no perm. app. filed*. Instead, such determinations are fact-intensive and require a thorough examination of the unique circumstances of each case and the specific, factual rationales for the relocation. *Carman*

*v. Carman*, No. M2011-01265-COA-R3-CV, 2012 WL 1048600, at *4 (Tenn. Ct. App. Mar. 26, 2012); *Lima v. Lima*, No. W2010-02027-COA-R3-CV, 2011 WL 3445961, at *7 (Tenn. Ct. App. Aug. 9, 2011). Whatever the rationale for relocation, it "must be a significant purpose, substantial when weighed against the gravity of the loss of the noncustodial parent's ability to participate fully in their children's lives in a more meaningful way." *Carman*, 2012 WL 1048600, at *4 (quoting *Webster*, 2006 WL 3008019, at *14) (internal quotation marks omitted).

Father has identified two reasons for relocation: (1) to live with his wife in Wisconsin because she needed to live in Wisconsin to care for her mother; and (2) so Father could pursue improved economic opportunities there, including what Father identified as "a well-paying job at a painting company." Under certain circumstances, these reasons can form the basis for a reasonable purpose to relocate; however, the trial court found that both reasons lacked a factual foundation.

It is understandable that Father wants to live with his wife, but this desire alone does not provide a reasonable purpose for relocation. *Carman*, 2012 WL 1048600, at *5 (quoting *Mitchell*, 2005 WL 1521850, at *3). Instead, cases dealing with this issue have focused on whether it is more reasonable for the new spouse to move to Tennessee. *Id.*; *see Mann v. Mann*, 299 S.W.3d 69, 72-74 (Tenn. Ct. App. 2009); *Mitchell*, 2005 WL 1521850, at *3. In this context, a new spouse's need to remain outside of Tennessee to care for a relative could justify the relocating parent's decision to join his new spouse in another state. *See Carman*, 2012 WL 1048600, at *7. However, this justification is not as strong when the relative in question can live independently and has other sources of care available. *See id*.

Here, although Ms. Mackey testified that she needed to care for her mother and that there were no other relatives who could do so, the trial court found this testimony less than credible. The credibility finding was based in part on the fact the court found that Ms. Mackey "evaded questions about her mother's health" and gave conflicting or misleading answers when cross-examined. Further, the court noted that her mother was healthy enough to have recently visited Tennessee to help renovate Ms. Mackey's and Father's Tennessee residence. *See id.* Accordingly, the trial court did not err when it found that Ms. Mackey wanted to remain in Wisconsin for her own convenience rather than because she needed to care for her mother.

As for Father's other reason for relocating, a higher salary and opportunities for career advancement, may serve as the basis for relocation. *See Rudd*, 2014 WL 872816, at *11 (quoting *Butler v. Butler*, No. M2002-00347-COA-R3-CV, 2003 WL 367241, at *2 (Tenn. Ct. App. Feb. 20, 2003)). However, when there is no firm job offer or proof of better job opportunities, this court has found such planned relocations did not have a reasonable purpose. *Id.* (citing *Rogers v. Rogers*, No. M2008-00918-COA-R3-CV, 2009 WL 1034795, at *6 (Tenn. Ct. App. Apr. 16, 2009)); *see Dye v. Fowler*, No. M2006-

01896-COA-R3-CV, 2007 WL 1515140, at \*3 (Tenn. Ct. App. May 23, 2007) ("It is not enough, however, that there exists a mere hope or belief of a better opportunity or a salary increase.").

On this issue, the trial court noted that Father was "extremely evasive" about his job in Wisconsin and that his demeanor was not convincing. More specifically, Father was evasive about the amount of time he worked for the painting company and whether he could continue to work for this employer on a full time basis in the future. Father's testimony, to the extent he provided any details, was that he worked in Wisconsin as a painter for Valenti's Painting and Redecorating for a period of time in 2013 at an hourly rate "[b]etween 20 and $25." But when asked "[h]ow long did you work there [i.e. at Valenti's in 2013]?" Father testified: "While I was there, before I got ordered back [by the circuit court in Tennessee for relocating without court approval], I was doing some work with them. There was a big project coming up, and it was kind of in between projects, so I was doing.mostly [sic] like some training on some stuff like that." However, in a January 2014 deposition, Father testified that he "only did a little training with Valenti" in Wisconsin, but he did not remember how long he trained.

Having reviewed Father's testimony, it is clear why the trial court found his credibility lacking. Moreover, Father has not identified – and we have not found – the clear and convincing evidence necessary for us to discount the trial court's credibility determination. *See In re Adoption of Kleshinski*, 2005 WL 1046796, at \*21. Thus, the evidence preponderates in favor of the finding that Father merely hoped for the possibility for better economic opportunities in Wisconsin, which is insufficient to constitute a reasonable purpose for relocation. *See Rudd*, 2014 WL 872816, at \*11.

The evidence does not preponderate against the trial court's findings that Father lacked a reasonable purpose for relocating with the child to Wisconsin. Accordingly, we affirm the trial court's finding that there was no reasonable purpose for Father to relocate to Wisconsin.

## C. BEST INTEREST OF THE CHILD

Once the trial court found that the proposed relocation did not have a reasonable purpose, it was required to determine whether relocation was in the best interest of the child. Tenn. Code Ann. § 36-6-108(e); *see Carman*, 2012 WL 1048600, at \*8. After considering the relevant factors, the trial court determined that relocation was not in the child's best interest. This determination was based on the findings that Chattanooga provided the child with more stability than Wisconsin; the child had formed relationships with relatives of both Mother and Father who lived nearby; and Father could not foster the relationship between Mother and the child. We have determined that the evidence does not preponderate against these findings.

Although the child had visited Wisconsin periodically, Tennessee had been his home for several years and both Mother and Father had family who lived near Chattanooga. Moreover, the child had good relationships with both sets of relatives. In contrast, the only family members the child had in Wisconsin were his stepsister and Ms. Mackey's relatives.

One of the important factors the trial court considered was Father's record of refusing to foster a healthy relationship between the child and Mother. *See* Tenn. Code Ann. § 36-6-106(a)(10) (2013). The court found that Father had failed to keep Mother advised of plans for the child and had interfered with Mother's time and involvement with the child.

The trial court was also concerned that Father would refuse to comply with future court orders if he relocated to Wisconsin. Significantly, the trial court found that Mother's credibility was "substantially greater than" Father's and that she testified convincingly about her desire for Father and the child to have a relationship. The court also found that Father surreptitiously sought an ex parte order from a Georgia court to relocate while this action was pending and Father was subject to the jurisdiction of the Tennessee court. When he obtained that order, he relocated almost immediately and did not notify Mother. Accordingly, the trial court was right to be concerned about Father's willingness to foster the relationship between Mother and the child, especially given the distance between Tennessee and Wisconsin.

Father contends that the trial court failed to address all of the applicable factors in Tenn. Code Ann. § 36-6-106 and that a review of *all* of the statutory factors demonstrates that relocation to Wisconsin is in the child's best interest. Although it is important for trial courts to be as detailed as possible, the relevant statutes only require the trial court to consider factors that are applicable to the case before it. *Burnett v. Burnett*, No. E2002-01614-COA-R3-CV, 2003 WL 21782290, at *6 (Tenn. Ct. App. July 23, 2003); *see* Tenn. Code Ann. § 36-6-106 ("The court shall consider all relevant factors, including the following, *where applicable* . . . .") (emphasis added). The trial court's order contains findings of fact regarding the applicable factors, and we conclude that the trial court satisfied its obligation in this regard. Moreover, as we have stated before:

> Ascertaining a child's best interests does not call for a rote examination of each of [the statutory factors] and then a determination of whether the sum of the factors tips in favor of or against the parent. The relevancy and weight to be given each factor depends on the unique facts of each case. Thus, depending upon the circumstances of a particular child and a particular parent, the consideration of one factor may very well dictate the outcome of the analysis.

*In re Audrey S.*, 182 S.W.3d 838, 878 (Tenn. Ct. App. 2005).

The greater willingness of one parent to foster a close relationship between the child and the other parent is an important factor in a best-interest determination, and "[o]ur case law is accordingly replete with examples where [this factor] has been the decisive factor in determining parenting arrangements." *In re Zamorah B.*, No. M2011-00864-COA-R3-JV, 2013 WL 614449, at *6 (Tenn. Ct. App. Feb. 15, 2013); *In re Jonathan S. C-B*, No. M2010-02536-COA-R3-JV, 2012 WL 3112897, at *14 (Tenn. Ct. App. July 31, 2012); *Howe v. Howe*, No. E2008-02580-COA-R3-CV, 2010 WL 323068, at *4 (Tenn. Ct. App. Jan. 28, 2010); *Morman v. Morman*, No. M2005-00931-COA-R3-CV, 2006 WL 2068757, at *5 (Tenn. Ct. App. July 25, 2006). Indeed, the General Assembly has stated that custody arrangements should "permit[] both parents to enjoy the maximum participation possible in the life of the child" consistent with the other factors. *See* Tenn. Code Ann. § 36-6-106(a) (2013).

The determination of where the best interests of the child lie is a factual question, *see In re T.C.D.*, 261 S.W.3d 734, 742 (Tenn. Ct. App. 2007), and we have concluded that the facts do not preponderate against the trial court's finding that relocating to Wisconsin is not in the child's best interest. Therefore, we affirm the trial court's ruling that the proposed relocation would not be allowed.

## II. ATTORNEY'S FEES

Mother contends that she should be awarded attorney's fees for the proceedings in the trial court and for the proceedings on appeal.

Mother first contends that the trial court erred when it failed to award her attorney's fees for the trial of her petition. Trial courts are vested with wide discretion when determining whether to award attorney's fees. *Threadgill v. Threadgill,* 740 S.W.2d 419, 426 (Tenn. Ct. App.1987); *see* Tenn. Code Ann. § 36-5-103(c) (permitting a spouse to recover attorney's fees for actions concerning child custody "which fees may be fixed and allowed by the court, before whom such action or proceeding is pending, in the discretion of such court."). We review a trial court's discretionary decision regarding attorney's fees pursuant to the abuse of discretion standard. *See Aaron v. Aaron*, 909 S.W.2d 408, 411 (Tenn. 1995). After reviewing the record pursuant to this standard, we are unable to conclude that the trial court abused its discretion by requiring that the parties pay their own attorney's fees.

Mother argues that she should be awarded attorney's fees for this appeal because Father's appeal was frivolous. This court may award one party "just damages" when it appears that "the appeal from any court of record was frivolous or taken solely for delay . . . ." Tenn. Code Ann. § 27-1-122. A frivolous appeal is one that is devoid of merit or one in which there is little prospect of success. *Morton v. Morton*, 182 S.W.3d 821, 838 (Tenn. Ct. App. 2005). Determining whether to award damages for a frivolous

appeal is discretionary decision. *Young v. Barrow*, 130 S.W.3d 59, 66-67 (Tenn. Ct. App. 2003). After reviewing the record, we decline to deem Father's appeal frivolous.

Mother also contends that she should be awarded attorney's fees for this appeal under Tenn. Code Ann. § 36-5-103(c).[7] The decision to award attorney's fees on appeal is within the sole discretion of this court. *Hill v. Hill*, No. M2006-02753-COA-R3-CV, 2007 WL 4404097, at *6 (Tenn. Ct. App. Dec. 17, 2007). "In determining whether an award for attorney's fees is warranted, we should consider, among other factors, the ability of the requesting party to pay his or her own attorney's fees, the requesting party's success on appeal, and whether the requesting party has been acting in good faith." *Shofner v. Shofner*, 181 S.W.3d 703, 719 (Tenn. Ct. App. 2004).

Here, Mother has succeeded on appeal and the record reflects that she has acted in good faith throughout the proceedings. Conversely, the record reflects that Father has not always acted in good faith throughout these proceedings. As for Mother's ability to pay her own attorney's fees, the proof was that Mother supported herself by working three jobs. Consequently, we find that Mother is entitled to recover her reasonable attorney's fees incurred in this appeal. Accordingly, on remand, the trial court shall award Mother the reasonable and necessary attorney's fees she incurred in this appeal.

### IN CONCLUSION

The judgment of the trial court is affirmed, and this matter is remanded for further proceedings consistent with this opinion. Costs of appeal are assessed against the appellant, Jonathan Mackey.

_____
FRANK G. CLEMENT, JR., JUDGE

---

[7] Although Tenn. Code Ann. § 36-5-103(c) is applicable to this case because it was an action concerning a change in child custody, we also note that Tenn. Code Ann. § 36-6-108(i) permits "[e]ither parent in a parental relocation matter [to] recover reasonable attorney fees and other litigation expenses from the other parent in the discretion of the court."