FILED
11/30/2017
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
September 20, 2017 Session

## CITRINA LOUISE GENSMER v. LUKE AUGUST GENSMER

Appeal from the Chancery Court for Henry County
No. 21044     Carma Dennis McGee, Chancellor

————————————————

### No. W2017-00443-COA-R3-CV

————————————————

The divorced mother and father of a nine year-old child were sharing residential time equally when the mother notified the father of her intent to relocate to Gulfport, Mississippi, eight to nine hours away.  The father opposed the relocation and asked the court to designate him as the primary residential parent.  After determining that the parties spent substantially equal intervals of time with the child during the twelve months immediately preceding the trial, the court conducted a best interest analysis to determine whether it was in the child's best interest to relocate with the mother.  Concluding that it was not in the child's best interest to relocate, the court designated the father as the primary residential parent and entered a new parenting plan in which the mother was awarded sixty-four days per year of residential time with the child.  The mother appealed several aspects of the trial court's decision, and we affirm the judgment in all respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which J. STEVEN STAFFORD, P.J., W.S., and BRANDON O. GIBSON, J., joined.

Shon DeBrock Johnson, Jasmine Monique McMackins, and Ethan Daniel Lavelle, Paris, Tennessee, for the appellant, Citrina Louise Gensmer.

Teresa McCaig Marshall, Paris, Tennessee, for the appellee, Luke August Gensmer.

## OPINION

### I. FACTUAL AND PROCEDURAL BACKGROUND

This is a post-divorce case in which Citrina Louise Gensmer ("Mother") sought to relocate to Gulfport, Mississippi with the parties' child ("the Child") a little over four years following the parties' divorce.  Luke August Gensmer ("Father") opposed the

relocation and filed a petition to modify the permanent parenting plan in place since the parties' divorce in 2009. Father sought to change the primary residential parent from Mother to himself, asserting that a change of material circumstances warranted such a change.

The trial court held a two-day hearing on June 10 and 11, 2015, during which Mother, Father, and several other witnesses testified. Recognizing that the relocation statute applies differently to situations in which parents spend substantially equal time with their child(ren) as provided in Tenn. Code Ann. § 36-6-108(c), than to situations in which the parents do not spend substantially equal time with their child(ren) as provided in Tenn. Code Ann. § 36-6-108(d), the court bifurcated the hearing to determine, first, which section of the relocation statute should be applied to this case.

Mother, Father, and Father's former girlfriend testified regarding the parties' time spent with the Child. In addition, Father introduced a calendar for the months August 2014 through May 2015 on which he marked the days the Child spent with each parent. Mother stated that she also had a calendar on which she had marked the days the Child spent with each parent, but she did not present the calendar as evidence at the trial. Mother disputed Father's calendar to the extent that it showed the Child was with Father on May 22[1] and regarding a few other days when Mother testified that Father did not pick the Child up from Mother's house until 5:00 or 6:00 in the evening. Other than those discrepancies, Mother testified that Father's calendar was correct. Mother testified that she spent 57% of the twelve-month period preceding the trial with the Child and that Father spent 43% of that time with the Child.

The trial court concluded that the parties spent substantially equal intervals of time with the Child and that Tenn. Code Ann. § 36-6-108(c) would apply to determine whether Mother would be permitted to relocate with the Child. The court announced its decision in open court following the first part of the trial. It stated, in relevant part:

> In January 2014, the mother sent notice of her intended relocation or notified father of her intended relocation. From January 13 to March 13, 2014, the father was in Fort Bragg, North Carolina, for training and was deployed for approximately two months during the summer of 2014. In 2015, the father has been to a five-day training in January. During this time, the mother testified that she did not keep exact records of the father's schedule with the child, but that the parties cooperated for the father to have the child as much as possible. Upon return from deployment in August '14, the father has kept a calendar since that time of the days that the child has spent with each parent. That has been admitted into evidence as Exhibit 1.

---

[1]Mother testified the Child was with her on that day.

The dates reflected on that are undisputed by the mother with the exception of May 22, 2015, and two other dates which she alleges were split by the parties. The mother does not have a record that she has kept of those dates. She stated that she had a calendar, but she did not have that with her today. However, she estimated the time that she had spent with the child since August 2014 to be 57 percent of the total time. Additionally, the father's former longtime girlfriend, Magen Washburn, testified that she was familiar with the schedule that the child had spent with the parties and she testified that she agreed that there had been basically an equal split since the day of move to Paris in 2012 with the exception of this period of deployment or training after that time.

. . . .

The Court finds that the relevant time period in this matter that the Court examined in looking at whether the parties had spent substantially equal intervals of time with the child should be that of one year prior to today's hearing. The Court notes specifically that this matter regarding relocation commenced in January of 2014. We are approximately 18 months after that date for today's hearing. The Court is unaware of the reasons for the delay in the time period, but the Court must consider the situation that the child is in now and the situation that the child has been accustomed to for the past 12 months. The Court is not stating that anyone bears the fault for this matter having not been heard more quickly. As I said, the Court is unaware why this matter has not come up for a final hearing any earlier than it has. The Court is making the relevance in the last 12 months or the relevant time period.

The Court finds, based upon the evidence presented, that the parents have spent substantially equal intervals of time with the child during the past year. Again, as stated earlier, the statute is not looking for exactly equal. It is substantially equal intervals of time that is stated in the statute. Therefore, this case would fall under TCA § 36-6-108(c), which states: "If the parents are actually spending substantially equal intervals of time with the child and the relocating parent seeks to move with the child" -- and skipping down to the pertinent parts – "the Court shall determine whether or not to permit relocation of the child based upon the best interest of the child. The Court shall consider all relevant factors, including those factors found in TCA § 36-6-106(a), 1-15."

The best interest factors enumerated in Tenn. Code Ann. § 36-6-106(a) include the following:

- 3 -

(1) The strength, nature, and stability of the child's relationship with each parent, including whether one (1) parent has performed the majority of parenting responsibilities relating to the daily needs of the child;

(2) Each parent's or caregiver's past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents and caregivers to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents, consistent with the best interest of the child. In determining the willingness of each of the parents and caregivers to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents, the court shall consider the likelihood of each parent and caregiver to honor and facilitate court ordered parenting arrangements and rights, and the court shall further consider any history of either parent or any caregiver denying parenting time to either parent in violation of a court order;

(3) Refusal to attend a court ordered parent education seminar may be considered by the court as a lack of good faith effort in these proceedings;

(4) The disposition of each parent to provide the child with food, clothing, medical care, education and other necessary care;

(5) The degree to which a parent has been the primary caregiver, defined as the parent who has taken the greater responsibility for performing parental responsibilities;

(6) The love, affection, and emotional ties existing between each parent and the child;

(7) The emotional needs and developmental level of the child;

(8) The moral, physical, mental and emotional fitness of each parent as it relates to their ability to parent the child. . . .

(9) The child's interaction and interrelationships with siblings, other relatives and step-relatives, and mentors, as well as the child's involvement with the child's physical surroundings, school, or other significant activities;

(10) The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment;

(11) Evidence of physical or emotional abuse to the child, to the other parent or to any other person. The court shall, where appropriate, refer any issues of abuse to juvenile court for further proceedings;

(12) The character and behavior of any other person who resides in or frequents the home of a parent and such person's interactions with the child;

(13) The reasonable preference of the child if twelve (12) years of age or older. The court may hear the preference of a younger child upon request. The preference of older children should normally be given greater weight than those of younger children;

(14) Each parent's employment schedule, and the court may make accommodations consistent with those schedules; and

(15) Any other factors deemed relevant by the court.

The trial court made findings of fact with respect to each enumerated factor, which we will address in more detail below, and determined that it was not in the Child's best interest to relocate to Gulfport. The trial court then addressed Father's motion to change the primary residential parent from Mother to him. The court first determined that Mother's relocation to Gulfport, which was an eight to nine hour drive from her former residence in Henry County, constituted a material change of circumstances for purposes of Tenn. Code Ann. § 36-6-101(a)(2)(B), the statute addressing the modification of a parenting plan for purposes of changing the primary residential parent. The court then addressed again the fifteen factors discussed above and determined that a change in the primary residential parent was in the Child's best interest in light of the fact that Mother had already relocated to Gulfport with her current husband and younger child of that marriage.

The trial court then issued its conclusions of law. First, it ruled that the Child would not be permitted to relocate to Gulfport because it was not in the Child's best interest to do so. The court then explained that if Mother changed her mind and decided not to relocate to Gulfport, it would be in the Child's best interest for the 2009 permanent parenting plan to remain in place. However, if Mother's decision to relocate was final, the court concluded it would be in the Child's best interest for the primary residential parent to change from Mother to Father.

The trial court adopted the permanent parenting plan Father proposed, with some modifications. The relevant aspects of the new parenting plan for purposes of Mother's appeal are that Mother is to have the Child each President's Day weekend, each Labor Day weekend, each fall break, every other Thanksgiving break, each spring break, the

first week of winter break through Christmas Day, and for the entire summer vacation except for the week immediately after school ends for the summer and the week immediately before school begins for the next school year.

Mother filed a motion to alter or amend the trial court's judgment. She argued that the trial court erred in considering only the year immediately preceding the trial to determine whether the parties spent substantially equal time with the Child for purposes of the relocation statute. Further, Mother argued, the court incorrectly based its calculations of time spent with the Child on Father's calendar, which only covered August 2014 through June 10, 2015, which was just a little more than ten months rather than the required twelve. Mother asked the court to order a new trial to allow the introduction of additional testimony and proof on the issues of the calculation and allocation of days each party spent with the Child and for the court to make a new determination of the proper relocation statute to apply to the facts of this case.

The trial court held a hearing on Mother's motion to alter or amend and then issued an Order in which it amended its findings to include the days it had failed to address in its earlier judgment, June 11 through July 31, 2015. The court noted that although Father's calendar did not include these days, the parties' testimony covered this time period and the court was able to allocate to each party the number of days spent with the Child without reopening the proof for additional evidence. Even after attributing more days to Mother for the twelve-month period immediately preceding the trial, however, the court did not alter its conclusion that the parties spent substantially equal time with the Child and maintained that Tenn. Code Ann. § 36-6-108(c) was the appropriate section of the relocation statute to apply to this case. In its Order dated January 3, 2017, the trial court wrote that in response to its query to Mother at the hearing about whether she intended to pursue her relocation, Mother "affirmed that she had already relocated." As a result, the trial court ordered that the new parenting plan in which Father was designated as the primary residential parent would replace the prior parenting plan dating from 2009.

Mother appealed the trial court's judgment and raises ten issues on appeal. Several of the issues concern the trial court's calculation and allocation of days each parent spent with the Child during the relevant period, all of which we will address in one section. Mother also contends the trial court erred by (1) refusing to allow the Child to testify; (2) determining that it was in the Child's best interest not to relocate to Gulfport with Mother and to designate Father as the primary residential parent; (3) failing to consider a child support deviation to account for the travel expenses involved in transporting the Child back and forth from Gulfport, Mississippi to Henry County, Tennessee; and (4) entering a new parenting plan in which Mother was awarded only sixty-four days per year with the Child.

## II. ANALYSIS

A. <u>Standard of Review</u>

We review the trial court's judgment de novo upon the record, affording the trial court's findings of fact a presumption of correctness unless the evidence preponderates against those findings. TENN. R. APP. P. 13(d); *Mann v. Mann*, 299 S.W.3d 69, 71 (Tenn. Ct. App. 2009). Evidence preponderates against a trial court's finding of fact if it supports a different finding "with greater convincing effect." *Mann*, 299 S.W.3d at 71 (citing *Walker v. Sidney Gilreath & Assocs.*, 40 S.W.3d 66, 71 (Tenn. Ct. App. 2000), and *The Realty Shop, Inc. v. R.R. Westminster Holding, Inc.*, 7 S.W.3d 581, 596 (Tenn. Ct. App. 1999)). We review issues of law de novo, applying no presumption of correctness to the trial court's legal conclusions. *Id.*

B. <u>Relocation Statute</u>

When divorced parents do not spend "substantially equal intervals of time" with their child(ren), Tennessee's parent relocation statute includes a presumption in favor of allowing the parent who spends more time with the child(ren) to relocate unless the relocation (1) is without a reasonable purpose, (2) would pose a threat of harm to the child(ren) that outweighs the threat of harm from a change of custody, or (3) is vindictive and intended to defeat or deter the other parent's visitation rights. Tenn. Code Ann. § 36-6-108(d). The relocation statute contains a different provision to address situations when the parents spend substantially equal intervals of time with the child(ren):

> If the parents are actually spending substantially equal intervals of time with the child and the relocating parent seeks to move with the child, the other parent may, within thirty (30) days of receipt of notice, file a petition in opposition to removal of the child. No presumption in favor of or against the request to relocate with the child shall arise. The court shall determine whether or not to permit relocation of the child based upon the best interests of the child. The court shall consider all relevant factors including those factors found in § 36-6-106(a)(1)-(15).

Tenn. Code Ann. § 36-6-108(c).

> Determining whether parents are spending substantially equal amounts of time with their children is, in the first instance, the trial court's prerogative. While the amount of time the parents are actually spending and the other relevant circumstances are factual matters that will be reviewed using the standard of review in Tenn. R. App. P. 13(d), a determination regarding whether the time actually being spent is "substantial," is an ultimate factual conclusion that is not entitled to the same deference. Thus, the appellate

courts must review a trial court's conclusion regarding the substantial equality of parents' residential time without a presumption of correctness. Meaningful appellate review requires us to make an independent decision regarding whether the residential time is substantially equal.

*Collins v. Coode*, No. M2002-02557-COA-R3-CV, 2004 WL 904097, at *3 (Tenn. Ct. App. Apr. 27, 2004).

The first question, then, is whether Mother and Father were spending "substantially equal intervals of time" with the Child during the relevant time period. The statute neither specifies the amount of time that is to be measured in making this determination nor indicates when the relevant time period is to begin and end. The record shows that Mother notified Father of her intent to relocate as required by the statute in December 2013 or January 2014 and that the trial did not take place until June 2015, approximately eighteen months later. The trial court found that the relevant time period "should be that of one year prior to today's hearing." Mother contends the trial court should have examined the twelve-month period prior to the start of the relocation proceedings rather than the twelve-month period prior to the date of trial. In the alternative, Mother argues the trial court should have examined more than the twelve months prior to the date of trial if the date of trial is the appropriate end date. The reason Mother makes this argument is because Father spent far less time with the Child in 2009, 2010, 2011, 2012, and 2013 than he spent with the Child in 2014 and 2015.

The record shows that Father is in the United States Army and that from the time of the parties' divorce in August 2009 until August 2014 Father spent months at a time out of state at different types of training programs and on active duty. The permanent parenting plan that was put into place when the parties were divorced named Mother as the primary residential parent and awarded each parent equal time with the Child. Once Father joined the Army and was unable to exercise his parenting time as set forth in the parenting plan, however, the parties entered an Agreed Order stating that Mother "shall care for the day to day needs of the parties' minor child while [Father] is in boot camp and on active duty status." The Agreed Order further stated that once Father returned from active duty military status, "the parties shall return to the Permanent Parenting Plan" dated August 2009, "with the parties exercising the shared parenting schedule set forth."

Father testified that he was away at training from mid-January through mid-March 2014 and that he had a six-week deployment "overseas" from the end of June to the beginning of August 2014. From the time he returned from that deployment in early August, however, Father testified that he has remained in Henry County other than one five-day stretch in January 2015 when he was sent to Mississippi for additional training. Father testified that at the time of trial he was "un-deployable" and would continue in that status until at least January 2016, when he planned to begin working as an instructor at the Army's Advanced Urban Combat unit located in Fort Campbell. Father testified that

he intended to work as an instructor for three years at Fort Campbell and that he would remain un-deployable throughout that period.

The Tennessee Supreme Court addressed the relocation statute in *Kawatra v. Kawatra*, 182 S.W.3d 800 (Tenn. 2005), in which the Court concluded that "when circumstances permit, the comparison period should be the twelve consecutive months immediately preceding the relocation hearing." *Kawatra*, 182 S.W.3d at 804; *see also Lima v. Lima*, No. W2010-02027-COA-R3-CV, 2011 WL 3445961, at *6 n.1 (Tenn. Ct. App. Aug. 9, 2011); *Edgeworth v. Edgeworth*, No. W2006-01813-COA-R3-CV, 2007 WL 2403356, at *9 (Tenn. Ct. App. Aug. 23, 2007); *Winans v. Winans*, No. M2004-02566-COA-R3-CV, 2006 WL 1865027, at *3 n.3 (Tenn. Ct. App. June 30, 2006); *Robinson v. Robinson*, No. M2003-02289-COA-R3-CV, 2005 WL 1541861, at *2 (Tenn. Ct. App. June 30, 2005); *Bulick v. Thompson*, No. W2004-00816-COA-R3-CV, 2005 WL 123502, at *6 (Tenn. Ct. App. Jan. 18, 2005); *Collins*, 2004 WL 904097, at *3.

Mother relies on the case *Lower v. Lower*, No. M2013-02593-COA-R3-CV, 2014 WL 5089346 (Tenn. Ct. App. Oct. 8, 2014), to argue that the trial court should have considered a longer period of time than twelve months to determine whether the parties spent substantially equal time with their child. Although the *Lower* court discussed in general terms the fact that the father had failed to exercise some of his scheduled visitation with the child over the course of a few years, the father in that case did not contend that he spent substantially equal time with the child for purposes of invoking Tenn. Code Ann. § 36-6-108(c). *Lower*, 2014 WL 5089346, at *2-4. Unlike the case under review, the parties in *Lower* did not dispute whether subsection (c) or (d) of the relocation statute should apply to the facts of their case. *Id.* at *4. Moreover, unlike this case, the *Lower* court did not address either the period of time that should be considered in determining whether the parents spent substantially equal time with the child or when the relevant time period should begin. As a result, the *Lower* case does not support Mother's argument.

Mother also relies on the case *Heilig v. Heilig*, No. E2014-00586-COA-R3-CV, 2015 WL 3654948 (Tenn. Ct. App. June 15, 2015), to support her argument that the relevant time period should be the twelve months prior to the start of the relocation proceeding rather than the twelve months preceding the trial. In *Heilig*, the mother filed her petition objecting to the father's relocation just two months before the hearing on the relocation took place. *Heilig*, 2015 WL 3654948, at *1-2. When it was discussing the days the mother actually spent with the child, the *Heilig* court wrote, "[W]e are left with the largely undisputed assertion that Mother actually spent 147 days, or 40% of the time, with the child in the 12 months preceding her petition." *Id.* at *6. There is no indication in *Heilig* that either parent was concerned about when the twelve-month period was to begin for purposes of measuring each party's time spent with their child. Further, the *Heilig* court did not discuss whether the one-year period should be measured from the date of the petition's filing or from the date of the hearing. The fact that the *Heilig* court

neglected to follow the Supreme Court's pronouncement in *Kawatra* that "the comparison period should be the twelve consecutive months immediately preceding the relocation hearing" does not mean that we are free to ignore the Supreme Court's instruction. To the contrary, "'[o]nce the Tennessee Supreme Court has addressed an issue, its decision regarding that issue is binding on the lower courts. The Court of Appeals has no authority to overrule or modify [the] Supreme Court's opinions.'" *Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d 422, 430 (Tenn. 2011) (quoting *Morris v. Grusin*, No. W2009-00033-COA-R3-CV, 2009 WL 4931324, at *4 (Tenn. Ct. App. Dec. 22, 2009) (further citations omitted)); *see also In re Estate of Brock*, No. E2016-00637-COA-R3-CV, 2016 WL 6503696, at *5 (Tenn. Ct. App. Nov. 3, 2016) (explaining that Court of Appeals is "bound to follow the precedent set by our supreme court").

Having determined that the relevant period for determining whether Mother and Father have spent substantially equal intervals of time with the Child is the twelve-month period immediately preceding the start of the trial, we now turn to Mother's next argument, which concerns the allocation of days between the parties during this twelve-month period. Father introduced into evidence a calendar he claimed he maintained from August 2014 through May 2015 that included a red "x" on every day the Child was with Mother or a green checkmark on every day the Child was with him. Mother testified that she also kept a calendar beginning in June 2014, but she did not present this calendar at the trial. She testified that she spent 57% of the twelve-month period with the Child, but other than May 22, she did not specify which days she spent with the Child. When asked to review Father's calendar for inaccuracies, Mother testified as follows:

> Q:  Did you notice any inaccuracies with this exhibit, ma'am?
> A:  Yes.
> Q:  Could you describe them to me?
> A:  A few of the days Luke has marked that he had [the Child], you know, half the day where I had [the Child], you know, that morning, and Luke didn't pick him up from me until 5:00 or 6:00 in the evening. And then the one big one that I noticed was in May on May 22, 2015.
> Q:  Yes.
> A:  [The Child] was in my custody that entire day.

The trial court initially considered only 309.5 days of the twelve months preceding the trial, and of those days, the court determined that Father spent 160.5 days with the Child and Mother spent 149 days with the Child. Using these numbers, Father would have spent 51.9% of the time with the Child and Mother would have spent 48.1% of the time with the Child.

In response to Mother's motion to alter or amend, in which Mother pointed out that the court had failed to consider June 11-July 31, 2015, in its calculations, the court credited Mother with an additional 41 days and Father with an additional 10 days. Considering these additional days, using the court's numbers, we calculate that Father had the Child for a total of 170.5 days, or 47.3% of the time, and Mother had the Child for a total of 190 days, or 52.7% of the time.[2] Giving Mother the benefit of the doubt and crediting her with another three days, based on her testimony at trial, would only shift the percentages slightly so that Father would be credited with 46.5% of the time and Mother with 53.5% of the time. Despite Mother's testimony that she spent 57% of the time with the Child, Mother was unable to provide any backup documentation or oral testimony to support her assertion.

The courts have not arrived at a bright-line test to apply to the question whether two parents have spent "substantially equal intervals of time" with their child(ren) for purposes of the relocation statute. *Bulick,* 2005 WL 123502, at *6; *Collins,* 2004 WL 904097, at *3. We have held that a 60%-40% split was not substantially equal, *Branham v. Branham,* No. E2003-01253-COA-R3-CV, 2004 WL 716729, at *3 (Tenn. Ct. App. Apr. 2, 2004); *Connell v. Connell,* No. 03A01-9808-CV-00282, 2000 WL 122204, at *3-4 (Tenn. Ct. App. Jan. 25, 2000), but we have also held that a 57%-43% split was substantially equal, *Monroe v. Robinson,* No. M2001-02218-COA-R3-CV, 2003 WL 132463, at *3-4 (Tenn. Ct. App. Jan. 16, 2003). As the *Monroe* court explained,

> The governing provision, section 36-6-108, requires that the time be substantially equal. It does not require that the time be exactly equal, nor does the provision set any concrete perimeters as to what qualifies as substantially equal. The statute has left the determination of what constitutes substantially equal within the discretion of the trial judge.

*Monroe,* 2003 WL 132463, at *4 (citations omitted). Based on the case law and Mother's failure to provide evidence contradicting Father's evidence of the time each parent spent with the Child in the twelve months immediately preceding the trial, we find the evidence does not preponderate against the trial court's findings and affirm the trial court's determination that the parties spent substantially equal intervals of time with the Child during the relevant time period.[3]

---

[2]The trial court noted, and the parties do not dispute, that four days of the year are unaccounted for and are not included in the calculation.

[3]Mother raises other issues regarding whether the parties spent substantially equal time with the Child, including whether the trial court erred by relying on Father's calculation of days to the extent he split certain days between the parties and stacked parts of different days to equal a full day. Although we agree with Mother that a "day" of parenting occurs when a child spends twelve hours or more with a parent, *Sansom v. Sansom,* No. M2016-01111-COA-R3-CV, 2017 WL 1948690, at *9-10 (Tenn. Ct. App. May 10, 2017) (citing TENN. COMP. R. & REG. 1240-02-04-.02(10)), Mother did not present evidence of any particular day, other than May 22, that Father allocated to himself but should have allocated to her.

C. Testimony by the Nine Year-Old Child

The Child was nine and a half years old at the time of trial. During the second phase of the trial, when the court focused on the Child's best interest, Mother's attorney requested that the Child be permitted to speak with the court. Father's attorney objected, arguing that it was not in the Child's best interest to participate in the proceedings. The court declined Mother's request, stating:

> [T]he statute does require that the Court give consideration to the reasonable preference of the child who is 12 years of age or older. Occasionally, the Court will hear from a child who is slightly under the mark of 12. It is in the discretion of the Court whether or not to hear from a younger child. In this situation, [the Child] is - - Although I understand that he's nine and a half, that's quite a ways from 12. Therefore, the Court is going to deny your motion to speak with the child in regard to his preference. The Court believes that there's ample evidence that will be presented for the Court to ascertain the best interest of the child without bringing a child under the age of 12 into the middle of a proceeding.

Mother relies on Tennessee Rule of Evidence 601 in support of her argument that the trial court erred in denying her request to have the Child speak with the judge. Rule 601 states that "[e]very person is presumed competent to be a witness except as otherwise provided in these rules or by statute."

The trial judge has the discretion to determine the competency of a witness. *State v. Carroll*, 36 S.W.3d 854, 866 (Tenn. Crim. App. 1999). We do not believe the court or Father's attorney opposed Mother's request based on the Child's competency; their concern was the appropriateness of asking the Child, who was nine and a half years old and well-loved by both parents, to state a preference about living primarily with one parent or the other.

Factor thirteen of the statutory best interest factors a court is directed to consider in relocation cases states:

> The reasonable preference of the child if twelve (12) years of age or older. The court may hear the preference of a younger child upon request. The preference of older children should normally be given greater weight than those of younger children.

---

All other issues Mother raises with regard to the trial court's determination that the parties spent substantially equal time with the Child, including her motion for a new trial, are pretermitted. Even if Mother were able to show she spent 57% of the relevant time period with the Child, we would not disturb the trial court's conclusion that the parties spent substantially equal intervals of time with the Child and that this case should be analyzed pursuant to Tenn. Code Ann. § 36-6-108(c).

Tenn. Code Ann. § 36-6-106(a)(13). The use of the word "may" in the statute means the trial court has discretion to choose whether to hear the preference of a child under the age of twelve. *See Cremeens v. Cremeens*, No. M2014-00152-COA-R3-CV, 2015 WL 1946165, at \*3 (Tenn. Ct. App. Apr. 29, 2015) (stating court is not required to consider child's preference in conducting best interest analysis when child is not yet twelve years old). Moreover, a trial court has discretion to control the proceedings in its courtroom and to make evidentiary decisions, and its decisions will not be overturned absent an abuse of that discretion. *State v. Mosley*, 200 S.W.3d 624, 629 (Tenn. Crim. App. 2005); *Hessmer v. Hessmer*, 138 S.W.3d 901, 904 (Tenn. Ct. App. 2003).

"In reviewing a trial court's discretionary decisions, the 'appellate courts should begin with the presumption that the decision is correct and should review the evidence in the light most favorable to the decision.'" *In re Estate of Link*, No. M2015-02280-COA-R3-CV, 2017 WL 696841, at \*6 (Tenn. Ct. App. Feb. 22, 2017) (quoting *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 709 (Tenn. Ct. App. 1999)). Appellate courts are not permitted to either second-guess a trial court's discretionary decision, *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010) (citing *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 223 (Tenn. Ct. App. 1999)), or substitute our discretion for that of the lower court, *id.* (citing *Henry v. Goins*, 104 S.W.3d 475, 479 (Tenn. 2003)). We will not reverse a trial court's discretionary decision unless the complaining party shows that the court applied an improper legal standard, reached a decision that is illogical or unreasonable, or erroneously assessed the evidence in reaching the decision at issue. *Id.*

Mother has not shown that the trial court abused its discretion in denying her request that the judge speak with the Child about relocating to Gulfport, Mississippi. Accordingly, we conclude the trial court did not err in refusing to allow the Child to participate in the proceedings.

D. Best Interest Analysis

Mother next contends the trial court erred in holding that the best interest of the Child weighed against relocation and in favor of designating Father as the primary residential parent. In addressing this issue, the court initially explained:

> Since the parties are spending substantial [sic] equal intervals of time with the child, no presumption in favor of or against the request to relocate with the child arises.

The court then considered each of the individual factors and applied them to the evidence introduced at the trial. The court found that the first six factors did not weigh either in favor of or against Mother's relocation with the Child. Other than factor fourteen,

however, the court found that the factors were either inapplicable or weighed against the Child's relocation. The court stated:

Factor 7, the emotional needs and developmental level of the child. The father has testified that he and the child enjoy participating in baseball, gardening, hunting, fishing, church activities, and general maintenance around the property. The mother has testified that she and the child enjoy playing ball, board games, riding bicycles and scooters. All of those activities will be developmentally appropriate for the child. However, the majority of the activities that the child has engaged in have been in the area of Henry County, that being the extracurricular items such as baseball and church activities. As far as the relocation is considered, the Court finds that in regard to the best interest of the child this factor weighs against relocation.

Factor Number 8, the moral, physical, mental, and emotional fitness of each parent as it relates to their ability to parent the child. I've heard no testimony that either party is any way physically, mentally or emotionally impaired. And the Court finds that they are both physically, mentally, and emotionally able to parent the child. In looking at fitness, a comparison of the parents must be made. This is not to say that anyone is a perfect parent. However, the Court is tasked by statute with determining the more fit parent and in this case where the more fit parent will be located. The Court makes the following findings as to this factor: As to the mother, both witnesses that testified for the mother testified as to her positive parenting abilities and positive relationship with the child. Both witnesses testified that she engaged in age appropriate activities with the child and was a very active parent. As to the father, as stated earlier, his pastor, supervisor at work, family member, and friend and coworker testified as to his character and positive discipline techniques that he employs with the child, which they have witnessed. The father has further testified that it is important to him to instill those characteristics in his son, those of a productive citizen. Additionally, the father's pastor, Mr. Swisher, testified that the father is regular in church attendance with the child. The mother testified that she was currently looking for a church and had visited a couple of churches in the Gulfport area that she would anticipate the child attending with her family. As to the issue of relocation, the Court finds that this factor weighs against relocation.

Number 9, the child's interaction and interrelationships with siblings, other relatives and step-relatives and mentors, as well as the child's involvement with the child's physical surroundings, school or other significant activities. The Court finds the child has attended the same elementary school since kindergarten, that being Lakewood Elementary in Henry County, and will

- 14 -

be entering the fourth grade in the fall. During that time, the child has had one discipline problem that would, by all accounts, be considered minor, but that the parents have addressed, that being in November 2014. There's no evidence of any further problems either before or after that time. As to extracurricular activities, the child is active in youth sports programs in Henry County, has been in the past in a Scouting program, although he is not currently in the Scouting program, has participated in baseball for several years since age four, has at one time participated in soccer, and participates in church activities on a regular basis at the Sportsmen's Church. As to relatives, the Court finds that most of the child's extended family live in the Paris/Henry County area. The paternal grandparents do reside in Minnesota and there is a maternal aunt in Ohio. And although the paternal grandparents live in Minnesota, they make extended visits multiple times a year to be involved in the child's life. The Court finds that the only relatives in the Gulfport, Mississippi, area are the child's mother, younger half-brother and step-father. The Court further finds that relocation to Gulfport, Mississippi, would restrict the child's relationship with his extended family members. Additionally, the Court does find that the mother has several family members in the Henry County area, and it has been mentioned that occasionally the maternal grandmother is used for a babysitter. The Court finds that as to the child's best interest, this factor weighs against the move.

Factor Number 10, the importance of continuity in the child's life and the length of time the child has lived in a stable and satisfactory environment. In looking from the time of the parties' divorce, the mother has lived in six residences since that time, the most recent being in Gulfport, Mississippi, since January 2014 on a part-time basis. Although she refers to that as home, the mother has testified that she basically spends half her time in Henry County and half her time in Gulfport, Mississippi, at this point. The mother's home includes her husband and almost four-year old son that she and he have together. The Mother has testified that there are no marital problems in their home, that there's no criminal activity and no use of drugs in the home. The Court finds that the mother's current husband will be deployed through his work as a Naval Seabee from July 2015 to February 2016, and after 2017 when his initial enlistment is up may be assigned to another base. Additionally, it's possible that he might be deployed again prior to that time.

As to the father, the Court finds that the father has had three permanent residences or semi-permanent since his divorce, a home that he maintained in Fort Bragg, North Carolina, a home that he maintained in Clarksville, and a home in Henry County since the fall of 2012. For the majority of the

time since the divorce, the father lived with his former girlfriend, Megan Washburn, who has testified today. Further, the father testified that he has trained during his military training for a job to place him at Fort Campbell where he is currently stationed and to which he commutes daily from his Henry County residence. The father is currently on a temporary assignment at Fort Campbell. His supervisor has testified that he has a guaranteed position as an instructor of specialized military training at Fort Campbell, which will begin in November 2015 and continue for a period of three years after that. The father has testified that if for some reason that position should fall through, he would not be re-enlisting when his current enlistment is up in the spring of 2016. The father has stated that his plans in three years, when the instructor's position will be up, are uncertain. Currently, the father lives in Henry County in a home located on a 43-acre tract at which the child engages in many recreational activities and maintains a regular routine. As to the best interest of the child, the Court finds that the factors considered pursuant to Item 10 weigh against the move.

Factor 11, evidence of physical or emotional abuse to the child, to the other parent or to any other person. There's been no evidence of any physical or emotional abuse presented by either party. Therefore, the Court finds that this issue is not applicable.

Item 12, the character and behavior of any other person who resides in or frequents the home of a parent and such person's interactions with the child. In the mother's home, she has testified that she, her husband, and a child from her current marriage live in the home in addition to [the Child] when he is in her care recently. The Court finds that the mother's current husband does have prior criminal charges in relation to drugs that mother knew of before the marriage. The Court finds that there's no evidence of current drug use or criminal problems by the husband, but that those charges did exist at the time of the marriage. The father lives alone at this time. The father's brother, Zeb, did testify that he is frequently involved in the child's life. He lives near by the father and is used for child care approximately every other week as needed. The Court finds that Zeb did have an incident involving a firearm and alcohol consumption in the past. However, there was no evidence of any inappropriate activity or behavior in the presence of this child, the subject of this proceeding, or any other child. As to Factor 12, which is the best [interest] of the child as to relocation, the Court finds this weighs against relocation.

Factor 13, the reasonable preference of a child if the child is 12 years of age or older. The Court may hear the preference of a younger child upon

request. A motion was made to hear from [the Child], who is nine and a half at this time. In light of the child's age, the Court has declined to hear from the child and has denied the motion to hear the preference of the child. The Court has already stated on the record the Court does not believe that the child should be brought into this matter. He is nine and a half. Occasionally, exceptions are made for children who are almost at the 12-year old mark. However, he is below that mark by a couple of years at least and does not need the stress that would be occasioned for having to come in and essentially be asked to choose between his parents in this matter.

Number 14, each parent's employment schedule. The father has previously been deployed and has previously been to training, but currently is stationed at Fort Campbell and works from 9:00 AM to 4:00 PM typically, he has stated, Monday through Thursday or typically a four-day week. He does have a one hour commute time. While the child is in his care during school, the child attends an after school program until 5:00 PM. The father has testified that his hours may be changing slightly when his instructor's position begins at the end of 2015, but it would not be a substantial change to his schedule. It would still be a daytime schedule with the exception of nighttime drills, which he states would only be occurring rarely but which he did state a plan for child care.  The Court finds that the mother is a stay-at-home mother. She is not employed outside the home and has not been employed outside the home since November 2014. As to the issue of a relocation and the best interest of the child, the Court finds that this factor would weigh in favor of relocation.

And Item 15, any other factors deemed relevant by the Court. The Court is going to make the following as Findings of Fact as to the entire matter, but which would be considered relevant as to best interest of the child: The Court finds that the mother is currently married to Ryan Planchart and has been since 2012. At that time he was in the Reserve, but became active in the Navy in 2013 due largely to the fact that he could not find work as a construction worker in the area. The Court finds that the mother does have another child in her home, her son Harper, who is a child with her husband and was born in August 2011. The Court further finds that the mother and her husband own a home in Gulfport, Mississippi, and the parties closed on that home on January 13, 2014. Since that time, the mother has testified that she spends roughly half her time in Tennessee and half of her time in Mississippi. The mother has further testified that at the time her husband enlisted in the active Navy, rather than in the Reserve, she knew that he would probably be stationed in either Gulfport, Mississippi, or in California based upon his job in the Navy as a Seabee. Additionally, the Court finds that the mother has testified that her husband intends to re-enlist in 2017

and that she is uncertain of the station to which he will be assigned at that time. The mother has further stated that the sole reason for relocation in this matter is due to her husband being stationed in Gulfport, Mississippi. The Court finds that the father has been in the Army since 2009. And from 2009 through 2013, he was engaged in training and deployment for a substantial amount of time. And since 2009 to the present, he has attended training or been deployed a total of approximately three years. The Court finds that the father's training in the Army has led him to be in a temporary, non-deployable position at Fort Campbell and that he will begin a position as an instructor in November 2015 for a period of three years and that he will be on non-deployable status during that time. The Court further finds that the father has continuously maintained a residence in Henry County since late 2012 where he has resided, absent the time that he was either deployed or at training. The Court further finds that the father has stated that he has no intention to relocate the child and that he would not re-enlist in the spring of 2016 in the event that his guaranteed position as an instructor were to, for some reason, not come to fruition.

The trial court then found that Mother's move to Gulfport constituted a material change in circumstances for purposes of considering Father's motion that the permanent parenting plan be modified and that he be named the primary residential parent. The court applied its findings as to each best interest factor to the issue of whether it was in the Child's best interest to change the primary residential parent from Mother to Father and concluded that Father should be designated the primary residential parent going forward. The court stated:

Number 1, the strength, nature and stability of the child's relationship with each parent, including whether one parent has performed the majority of parenting responsibilities related to the daily needs of the child. Based upon the Findings of Fact already stated, the Court finds the parties are equal in this regard.

Number 2, each parent or caregiver's past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents and caregivers to facilitate and encourage a close and continuing parent/child relationship between the child and both the child's parents consistent with the best interest of the child. Based upon the Findings of Fact previously stated in regard to Factor 2, the Court finds the parties are equal in this regard.

Number 3, refusal to attend a court ordered parenting education seminar. That is not applicable.

Number 4, the disposition of each parent to provide the child with food, clothing, medical care, education, and other necessary care. Based upon the Findings of Fact already stated, the Court finds the parties are equal in this regard.

Number 5, the degree to which a parent has been the primary caregiver defined as the parent that has taken greater responsibility for performing parental responsibilities. Based upon the Findings of Fact previously stated, the Court finds that this factor weighs in favor of the mother.

Number 6, the love, affection and emotional ties existing between the parent and the child. Based upon the Findings of Fact previously stated as to this factor, the Court finds this factor does not weigh in favor of either party, but the parties are equal in this regard.

Number 7, the emotional needs and developmental level of the child. Based upon the Findings of Fact previously stated, the Court finds the parties are equal in this regard.

Number 8, the moral, physical, mental and emotional fitness of each parent as it relates to their ability to parent the child. Based upon the Findings of Fact previously stated in regard to the factor, the Court finds this factor weighs in favor of the father.

Number 9, the child's interaction and interrelationships with siblings, other relatives, step-relatives, and mentors, as well as the child's involvement with the child's physical surroundings, school and other significant activities. The Court finds that this factor, based upon the previously stated Findings of Fact, weighs in favor of the father.

Item 10, the importance of continuity in the child's life and the length of time the child has lived in a stable and satisfactory environment. Based upon previously stated Findings of Fact in regard to this factor, the Court finds this factor weighs in favor of the father.

Number 11, evidence of physical or emotional abuse to the child, to the other parent or to any other person. Again, the Court has found there's no evidence of anything in regard to abuse. Therefore, this is not applicable.

Number 12, the character and behavior of any other person who resides in or frequents the home of a parent and such person's interaction with the child. Based upon previously stated Findings of Fact, the Court finds this factor weighs in favor of the father.

Number 13, the reasonable preference. For the reasons previously stated, this is not applicable.

Number 14, each parent's employment schedule. Based upon the previously stated Findings of Fact, the Court finds this factor weighs in favor of the mother. As to any other factors deemed relevant by the Court, the Court has previously made the Findings of Fact, which additionally are considered as other factors in the designation of a primary residential parent.

In her brief, Mother analyzes most of the best interest factors and explains why she believes the trial court erred by not finding that most of the factors weighed in her favor when considering both the relocation and change of primary residential parent questions. She focuses largely on the amount of time Father was away between 2009 and 2014 either at training or in active status and points out that during that time she was the primary caregiver for the Child. Mother does not deny that Father is a good father or that he loves the Child; but she, like Father, wants to have the Child live primarily with her.

This case is similar to *Sansom v. Sansom* to the extent that Mother "appears to be asking this Court to reevaluate each fact heard by the trial court and simply reach a different conclusion than that of the trial judge." *Sansom*, 2017 WL 1948690, at *4. As the *Sansom* court noted, Mother's arguments fail "to take into account the deferential standard of review by which we assess a trial court's decisions regarding child custody." *Id.* Trial courts have "'wide discretion in matters of child custody and . . . the appellate courts will not interfere except upon a showing of erroneous exercise of that discretion.'" *Heilig*, 2015 WL 3654948, at *3 (quoting *Aragon v. Aragon*, No. M2013-01962-COA-R3-CV, 2014 WL 1607350, at *4 (Tenn. Ct. App. Apr. 21, 2014)); *see also Koch v. Koch*, 874 S.W.2d 571, 575 (Tenn. Ct. App. 1993). Appellate courts are hesitant to second-guess a trial court's custody and visitation decision because these decisions "'often hinge on subtle factors, including the parents' demeanor and credibility.'" *Lower*, 2014 WL 5089346, at *4 (quoting *Hyde v. Bradley*, No. M2009-02117-COA-R3-JV, 2010 WL 4024905, at *3 (Tenn. Ct. App. Oct. 12, 2010)).

Our review of the record supports the trial court's recitation of the evidence introduced at trial. "Appellate courts are not inclined to relitigate factual issues on appeal that were reasonably resolved by the trier of fact." *Sansom*, 2017 WL 1948690, at *4. As the court wrote in *Sansom*, "we find [Mother's] arguments to this Court that [s]he simply does not agree with the conclusion reached by the trial court to be unavailing." *Id.* The trial court found that both parties love the Child and are both excellent parents. The factors that tipped the scales against allowing the Child to relocate and changing the primary residential parent seemed to be the Child's involvement with the community in Henry County, the continuity of his education in an environment where he has flourished,

and the presence and support of extended family members on both sides of the family who live in and around Henry County. Mother has failed to show that the trial court abused its discretion in conducting its best interest analysis, and we find that the evidence does not preponderate against the trial court's findings on any of the factors the court considered. We hold that the trial court's conclusions that it was not in the Child's best interest to relocate to Gulfport, Mississippi and that it was in the Child's best interest to change the primary residential parent from Mother to Father were "within the spectrum of rulings that could reasonably flow from the applicable facts and law." *Id.* at *8. Accordingly, we affirm the trial court's judgment that Mother is not permitted to relocate with the Child to Gulfport and that Father should be named the primary residential parent.

E. Change in Permanent Parenting Plan

Mother contends that the trial court erred in finding that her move to Gulfport, Mississippi constituted a material change in circumstances for purposes of changing the primary residential parent to Father and establishing a new permanent parenting plan. Mother relies on *Winans v. Winans* in support of her argument. In *Winans*, the mother sought to relocate with the parties' children to Texas, and the father opposed the relocation and moved to change the primary residential parent from the mother to himself on the basis that the mother's move out of state constituted a material change of circumstances. *Winans*, 2006 WL 1865027, at *1, 7. The trial court determined that it was not in the children's best interest to allow the mother to relocate, and it denied the father's motion to designate him as the primary residential parent. *Id.* at *2. The court reasoned that its denial of the mother's request to relocate eliminated the father's reason for seeking the change in the primary residential parent.[4] *Id.* at *7. On appeal, this court reversed the trial court's ruling and held that it was in the children's best interest to allow the mother to relocate to Texas with the children. *Id.* This court then ruled that the father had failed to show there was a material change in circumstances to justify the change in primary residential parent. *Id.* at *8. Relying on other case law from Tennessee, the *Winans* court wrote that "'relocation, in and of itself, is not a material change of circumstances sufficient to justify a redetermination of custody.'" *Id.* (quoting *Scott v. Scott*, No. 01A01-9806-CH-00272, 1999 WL 254420, at *2 (Tenn. Ct. App. Apr. 30, 1999)).

In contrast to the situation in *Winans*, we are affirming the trial court's determination that it is not in the Child's best interest to relocate with Mother to Gulfport, and Mother has decided to relocate despite the fact that the Child will not be relocating with her. The trial court explained that if Mother decided to stay in Henry County and not relocate to Gulfport, it would not modify the parenting plan and Mother would

---

[4]Unlike the case here, the mother in *Winans* did not appear willing to relocate if she could not bring her children with her to Texas.

remain the primary residential parent.  However, when the trial court asked Mother during the hearing on Mother's motion to alter or amend whether she intended to move forward with her planned relocation, Mother responded that she had already relocated. With Mother in Gulfport, the Child in Henry County, and Father in Henry County, there can be no argument but that Mother's move to Gulfport constitutes a material change in the child's circumstances, that Mother cannot continue in her role as the primary residential parent, and that the former parenting plan, under which the parents were each awarded equal time with the Child, must be modified.[5]  *See Blair v. Badenhope*, 77 S.W.3d 137, 150 (Tenn. 2002) (explaining material change in circumstances must occur after initial custody determination and must affect child's well-being in meaningful way).

F.  Child Support Deviation

In the modified permanent parenting plan, the trial court ordered Mother to be responsible for transporting the Child to and from Father's residence in Henry County. Mother was also ordered to pay child support to Father on a monthly basis.  Mother argues the trial court erred in failing to provide her with a child support deviation to take into account her costs of transporting the Child back and forth to Henry County from Gulfport.

Tennessee Code Annotated section 36-6-108(f) provides:

The court shall consider the availability of alternative arrangements to foster and continue the child's relationship with and access to the other parent. The court shall assess the costs of transporting the child for visitation, and determine whether a deviation from the child support guidelines should be considered in light of all factors including, but not limited to, additional costs incurred for transporting the child for visitation.

Mother cites to no evidence she presented at trial regarding the costs of transporting the Child back and forth to Henry County, and we are not aware of any such evidence in the record. More importantly, however, Mother failed to ask the trial court to provide her with a deviation to account for her transportation costs either at trial or in her motion to alter or amend.  As a result, Mother has waived her right to have this court consider whether the trial court erred in failing to order a deviation from her child support obligation.  *See Alexander v. Armentrout*, 24 S.W.3d 267, 272 (Tenn. 2000) (holding defendants waived defense of equitable estoppel on appeal because they failed to raise defense during trial court proceedings); *PNC Multifamily Capital Inst. Fund XXVI Ltd. P'ship v. Mabry*, 402 S.W.3d 654, 660 (Tenn. Ct. App. 2012) ("It is well settled that issues not raised at the trial level are considered waived on appeal.").

---

[5]If Mother were permitted to relocate with the Child, we would agree with Mother that her move would not constitute a material change in circumstances for purposes of changing the primary residential parent.

G.  Residential Time Awarded to Mother

Mother's final argument is that the trial court erred in awarding her only sixty-four days of residential time with the Child in the new parenting plan.  The trial court awarded Mother every Labor Day weekend, every President's Day weekend, every fall break, every other Thanksgiving, the first half of every winter break, including Christmas Day, every spring break, every Mother's Day weekend, and the majority of each summer vacation.  In addition, the court ordered that whenever Mother is in Henry County and provides reasonable notice to Father, "she shall have parenting time with the minor child as the parties agree.  Should the parties not agree as to parenting time in Henry County, the mother will be afforded not less than every other weekend from Friday afternoon until Monday morning when the mother will be responsible for taking the child to school."

Mother complains the trial court awarded her insufficient time with the Child, and she cites a portion of Tenn. Code Ann. § 36-6-106(a) in support of her argument.  The relevant part of this statute provides:

> In taking into account the child's best interest, the court shall order a custody arrangement that permits both parents to enjoy the maximum participation possible in the life of the child consistent with the factors set out in this subsection (a), *the location of the residences of the parents*, the child's need for stability and all other relevant factors.

(Emphasis added.)  Considering the fact that the Child attends school in Henry County and that Mother has relocated to a house that is eight to nine hours away from the Child, it appears to us that the trial court has, in fact, complied with this statute by making an effort to permit Mother to enjoy the maximum participation possible in the life of the Child.  Mother offers no suggestions regarding how the trial court could have awarded her more days during the year under the circumstances.  Father indicated he would have been happy to continue sharing the parenting time 50/50 if Mother had decided to stay in Henry County rather than move to Gulfport.

As the Supreme Court has written, "parenting arrangements are factually driven" and "determining the details of parenting plans is 'peculiarly within the broad discretion of the trial judge.'"  *Armbrister v. Armbrister*, 414 S.W.3d 685, 693 (Tenn. 2013) (quoting *Suttles v. Suttles*, 748 S.W.2d 427, 429 (Tenn. 1988) (further citation omitted)).  "It is not the function of appellate courts to tweak a visitation order in the hopes of achieving a more reasonable result than the trial court."  *Eldridge v. Eldridge*, 42 S.W.3d 82, 88 (Tenn. 2001).  Mother's reliance on *In re Cannon H.*, No. W2015-01947-COA-R3-JV, 2016 WL 5819218 (Tenn. Ct. App. Oct. 5, 2016), does not help her cause for many reasons, not the least of which is that the parents in that case did not live eight or nine hours apart from one another as the parties do here.  Consistent with the Court of

Appeals' opinion in *Cannon*, the trial court in this case has ordered a "custody arrangement[] that allow[s] each parent to enjoy the maximum possible participation in the child's life . . . to the extent that doing so is consistent with the child's best interests." *Cannon*, 2016 WL 5819218, at *6.

### III. CONCLUSION

The judgment of the trial court is affirmed in all respects, and this matter is remanded with costs of the appeal to be assessed against the appellant, Citrina Louise Gensmer, for which execution shall issue if necessary.

_____

ANDY D. BENNETT, JUDGE